# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| RECLAIM IDAHO, an Idaho political action committee, and LUKE MAYVILLE, | ) ) ) **No. 20-35584** |
| Plaintiffs - Appellees, | ) ) D.C. No. 1:20-cv-00268-BLW |
| vs. | ) ) U.S. District Court for Idaho, |
| BRADLEY LITTLE, in his official capacity Governor of Idaho, and LAWERENCE DENNEY, in his official capacity as Idaho Secretary of State, | ) Boise ) ) ) ) ) ) |
| Defendants - Appellants. | ) |

Appeal from the United States District Court for the District of Idaho
(Winmill, B. L. Presiding)

---

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL

---

HON. LAWRENCE G. WASDEN
Attorney General

STEVEN L. OLSEN
Chief of Civil Litigation

ROBERT A. BERRY, ISB #7442
MEGAN A. LARRONDO, ISB #10597
Deputy Attorneys General
P. O. Box 83720
Boise, ID 83720-0010
*Attorneys for Appellants Bradley Little and Lawerence Denney*

## CIRCUIT RULE 27-3 CERTIFICATE

Pursuant to Ninth Circuit Rule 27-3, counsel for movants state:

1.     The telephone numbers, e-mail addresses, and office addresses of the

attorneys for the parties are:

LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation Division

ROBERT A. BERRY, ISB #7442
MEGAN A. LARRONDO, ISB #10597
Deputy Attorneys General
Civil Litigation Division
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone:   (208) 334-2400
Facsimile:   (208) 854-8073
robert.berry@ag.idaho.gov
megan.larrondo@ag.idaho.gov

*Counsel   for   Defendants/Appellants*
*Bradley Little and Lawerence Denney*

DEBORAH A. FERGUSON
CRAIG HARRISON DURHAM
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, ID 83702
Telephone:       (208) 484-2253
                (208) 724-2617
Facsimile: (208) 906-8663
daf@fergusondurham.com
chd@fergusondurham.com
*Counsel for Plaintiffs/Appellees*

2.     Idaho Governor Bradley Little and Secretary of State Lawerence

Denney seek this emergency stay to preserve the integrity of Idaho's duly enacted

election and ballot initiative laws and to prevent disruption, uncertainty and loss of

public confidence in its impending elections.

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 2

On June 26, 2020, the United States District Court for the District of Idaho entered a Memorandum Decision and Order (Dkt. 14) based upon its oral ruling of June 23, 2020 granting Plaintiffs' Expedited Motion for Preliminary Injunction (Dkt. 2) that was filed Saturday, June 6, 2020. (Dkt. 2.) On June 30, 2020, the district court issued an Order granting mandatory injunctive relief that requires implementation of a completely new electronic signature gathering process by **July 9, 2020**, which will significantly alter and disrupt Idaho's ongoing election process for multiple resources, including by outsourcing control of the election to private parties (i.e. Reclaim Idaho and DocuSign).[1] (*See* Dkt. 19).

Idaho does not permit online signature gathering. There is no state or federal law authorizing it. More importantly, in-person signature gathering is permissible under current law and circumstance, thus there is no reason for an alternative signature gathering method once the deadline has been extended.

The statutory deadline for submitting signatures to qualify an initiative for this year's ballot was May 1, 2020. *See* Idaho Code § 34-1802(2). Appellees failed to obtain the required signatures or seek any relief before that deadline. The district

---

[1] The district court originally ordered the State to choose one of two remedies: (1) automatically place the initiative on the ballot, or (2) implement an electronic signature gathering process and allow it to continue for 48 days until late-August. Dkt. 14. The district court's current Order (Dkt. 19) may leave open the possibility that it will order the first option.

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 3

court's injunction now gives Appellees an extension until mid-August to collect electronic signatures—a method without any basis in Idaho law.

The district court's Orders voided significant deadlines and obligations while Idaho prepares for elections in August and November. Statute gives county clerks sixty days to verify signatures submitted in support of an initiative; it is now rendered void. Idaho Code § 34-1802(3). Similarly, the requirement to obtain 6% of signatures from 18 of the State's 35 legislative districts in person is now void. *See* Idaho Code § 34-1805. And the same may be said for the statute requiring signatures be submitted on or before May 1. Idaho Code § 34-1802(3). The orders eliminate any ability for the public to submit argument or rebuttal, which by law is required to be completed by August 1, 2020 and which would otherwise be included in the voter pamphlet. *See* Idaho Code §§ 34-1812A, -1812B, -1812C.

On June 29, 2020, the district court denied the request of the Governor and Secretary of State to stay enforcement of its order pending appeal. (Dkt. 17.)

Unless the district court's Order is stayed **on or before July 9**, Idaho will be forced to abandon statutory requirements that ensure the integrity of its initiative process, attempt to comply with the Order's unrealistic demands, and significantly change its election schedule. The Order interferes with the State's fundamental right to control its election in violation of Supreme Court precedent. It will cause voter confusion, undermine public confidence in Idaho's election process, and impose

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 4

impossible burdens on state and local election officials (**who are not parties to the case**) already struggling to cope with the challenges created by the ongoing pandemic.

3. On June 29 and July 1, I spoke with the 9th Circuit, and on June 29 with plaintiffs' counsel, Deborah Ferguson. Her clients oppose this motion. I am serving all counsel with this motion by CM/ECF at the same time it is filed with the Court.

*/s/ Robert A. Berry*

## INTRODUCTION

Pursuant to Rule 8 and 27 of the Federal Rules of Appellate Procedure, appellants Governor Bradley Little and Secretary of State Lawerence Denney (sometimes "the State") move this Court to stay the Orders of the district court entered on June 26, 2020 (Dkt. 14) and June 30, 2020 (Dkt. 19), pending appeal. In similar cases involving constitutional challenges to state election procedures during the pandemic, the Supreme Court and Courts of Appeal have stayed similar orders that interfere in state-run elections. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020) ("*RNC*"); *Thompson v. DeWine*, 959 F.3d 804 (6th Cir. 2020) (per curiam). Like the lower courts in *RNC* and *Thompson*, the district court's mandatory injunction "fundamentally alters the nature of the election." *RNC*, 140 S. Ct. at 1207. Like the lower court in *Thompson*, the district court "exceeded its authority by rewriting [state election] law with its injunction." 959 F.3d at 812.

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 5

Any harm Appellees suffered was caused by COVID-19 and their lack of diligence, not State action. The State is likely to succeed on the merits of its appeal, and its interest in maintaining its duly enacted election and ballot initiative laws will be irreparably harmed without a stay. The equities favor the State because Appellees failed to timely act, thus creating the dilemma they complain about. And the public interest in confidence in the integrity of the elections process weighs heavily in favor of a stay. This Court should stay the district court's order.

## **BACKGROUND**

The Idaho Constitution provides that legal voters may access ballot initiatives "under such conditions and in such manner as may be provided by acts of the legislature." Idaho Const. art. III, § 1 (emphasis added).

Appellees filed their initiative on August 30, 2019. (Declaration of Jason Hancock ("Hancock Decl.") ¶ 5 attached as Ex. A.) After review by the Secretary of State and Attorney General, Appellees received the ballot titles and sample petition on October 25, 2019. *Id.*; *see* Idaho Code § 34-1809. Rather than take advantage of the full 18 months allowed by statute to circulate the initiative petition to gather the necessary signatures to get the initiative petition on the ballot, Idaho Code § 34-1802(1)-(2), Appellees chose to seek to place the initiative on the ballot in November 2020, leaving only six months until May 1, 2020 to collect the necessary signatures.

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 6

(*Id.* ¶ 6.) Appellees left the vast majority (almost three-quarters) of its efforts for March and April 2020. (Dkt. 2-2 ¶ 15 attached as Ex. B.)

In circulating their petition, Appellees were bound by a statute that has been in effect since 1933 requiring that "[a]ny person who circulates any petition for an initiative … shall be a resident of the state of Idaho and at least eighteen (18) years of age." Idaho Code § 34-1807. Each sheet of a petition containing signatures "shall be verified on the face thereof" by the person circulating the petition in a statutorily prescribed form. *Id.* This requirement applies equally to all petitioners.

By April 30, 2020, Reclaim Idaho was required to gather signatures of legal voters equal to at least six percent of the qualified electors at the time of the last general election in each of at least 18 legislative districts. Idaho Code § 34-1805.

Reclaim Idaho's signatures had to be submitted to the appropriate county clerk for verification by May 1, 2020. Idaho Code § 34-1802(2). County clerks have 60 days to verify the signatures, "but in no event shall the time extend beyond" June 30, 2020. Idaho Code § 34-1802(3). Reclaim Idaho missed its May 1 deadline because it voluntarily suspended its campaign on March 18, 2020, after trying briefly to figure out a way that it felt comfortable collecting signatures during the COVID-19 pandemic in light of federal public health guidance. (Ex. B Dkt. 2-2 ¶¶ 23, 28.)

A Reclaim Idaho staffer emailed a member of Governor's Little's staff on March 16, 2020 requesting a meeting between Reclaim Idaho's founder and the

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 7

Governor to discuss "the safest way to move forward with the ballot initiative." (Declaration of Andrew Mitzel, attached as Exhibit C.) No other communications with the Governor's office were made before this day or after. (*Id.*) The Secretary of State's office was emailed once on March 16, 2020 about electronic signature gathering and it correctly informed Appellees that the Secretary did not have jurisdiction to make the change. (Declaration of Sheryl Millard attached as Exhibit D.)

The Governor is not involved in the initiative process. His office's only involvement was the March 16th email correspondence with a member of his staff. When Governor Little issued Idaho's first Stay-Home Order on March 25, 2020, Reclaim Idaho had already suspended its campaign a week earlier. (Ex. B Dkt. 2-2 ¶¶ 23, 28.)

Having missed the deadline to submit its signatures and sat in its rights for weeks, Appellee filed suit on June 6, 2020 alleging that Appellants had violated their First Amendment rights by not suspending Idaho law to allow them to collect signatures during the pandemic. The district court granted their motion for a preliminary injunction on June 23, 2020. (Dkt. 14). As stated above, the district court has now ordered that Appellees be allowed to collect signatures electronically until mid-August. (Dkt. 19). This order will void a series of statutes that establish the deadlines leading up to an election.

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 8

Once the signatures on an initiative petition submitted by the County Clerks are filed with the Secretary of State, arguments concerning initiative measures are due July 20, 2020; rebuttal arguments are due August 1, 2020; and voter pamphlets about the initiative must be printed and distributed to all households in the State no later than September 25, 2020. Idaho Code §§ 34-1812A, 1812B, 1812C. These deadlines are necessary to ensure an orderly general election in November 2020.

Sample ballots from the Secretary of State are due September 7, 2020 to the county clerks, along with certified copies of the names of state office candidates, and a certified copy of the ballot titles and number of measures to be voted upon at the next general election. Idaho Code § 34-909. All absentee ballots must be printed no later than September 14, 2020 as required by the federal Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), in particular 52 U.S. Code § 20302, and Directive 2015-1 issued by Secretary of State Lawerence Denney. (Ex. A, Hancock Decl. ¶ 7; Declaration of Phil McGrane, ¶¶ 14-15 attached as Exhibit E.) Pursuant to the UOCAVA and Directive 2015-1, absentee ballots, if requested, must be mailed by September 21, 2020. This is important and challenging to carry out in any year, and incredibly demanding during a once-in-a-century pandemic.

As stated by Clerk McGrane, it is already difficult enough to prepare for a Presidential general election, which consistently sees the largest turnout. (McGrane Decl, Ex. E, ¶¶ 4-5.) It takes an enormous amount of preparation and work to ensure

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 9

each election goes smoothly, and even more so due to COVID-19. (*Id.*) There are numerous practical and procedural challenges to the relief requested, most notably the time needed to complete all related requirements. (*Id.* ¶ 18.) This is compounded by the required tasks of conducting the November Election, and at least as Ada County (Idaho's largest county) is concerned, an August election as well, all of which makes this relief near impossible to complete. (*Id.*)

The district court Order severely and unquestionably disrupts Idaho's election.

## <u>STANDARDS FOR A STAY</u>

A stay pending appeal is "'an exercise of judicial discretion' ... [that] 'is dependent upon the circumstances of the particular case.'" *Lair v. Bullock*, 697 F.3d 1200, 1203 (9th Cir. 2012). "Judicial discretion in exercising a stay is to be guided by the following legal principles, as distilled into a four factor analysis in *Nken*: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Lair*, 697 F.3d at 1203 (quoting *Nken*, 556 U.S. at 434). The first two factors "'are the most critical.'" *Id.*

To establish the first factor, the party moving for a stay "must show that there is a 'substantial case for relief on the merits.'" *Lair*, 697 F.3d at 1204 (quoting *Leiva-*

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 10

*Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011)). It does not require the moving party to show that it is more likely than not that it will win on the merits. *Lair*, 697 F.3d at 1204. It is sufficient to show that the appeal raises "'serious legal questions,'" or that the moving party has a "'reasonable probability'" of, or "'fair prospect'" for, success. *Lair*, 697 F.3d at 1204 (quoting *Leiva-Perez*, 640 F.3d at 967-68). The second stay factor – irreparable injury – is satisfied if the applicant shows "there is a probability of irreparable injury if the stay is not granted." *Lair*, 697 F.3d at 1214. The last two factors require the court "to weigh the public interest against the harm to the opposing party." *Lair*, 697 F.3d at 1215 (citing *Nken*, 556 U.S. at 435). "[T]he stay inquiry is 'flexible' and involves an equitable balancing of the stay factors." *Lair*, 697 F.3d at 1215 (quoting *Leiva-Perez*, 640 F.3d at 964-66).

## BASIS FOR STAY

### A. Defendants/Appellants are Likely to Succeed.

Idaho "has a compelling interest in preserving the integrity of its election process. Confidence in the integrity of our electoral processes is essential to the function of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). The district court's proposed remedy undermine this compelling interest.

The State has the authority to establish the procedures for ballot initiatives— not private companies. *E.g.*, *Thompson v. DeWine*, 959 F.3d 804, 808 (6th Cir. 2020) (per curiam). Content-neutral initiative requirements that are reasonable and

nondiscriminatory are subjected to rational basis review. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). Severe restrictions "such as exclusion or virtual exclusion from the ballot" are judged under strict scrutiny. *Thompson*, 959 F.3d at 809 (citing *Burdick*, 504 U.S. at 434) (citation omitted). Cases in between weigh the burden imposed by the state against the state's interests, and take into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*

The State will prevail in this appeal because Reclaim Idaho cannot show a First Amendment violation or any burden from a state action. *Thompson*, 959 F.3d at 810 ("… First Amendment violations require state action."). Reclaim Idaho has repeatedly acknowledged that it suspended its campaign *due to the COVID-19 pandemic before issuance of the Orders to Self-Isolate* it claims violated its right to collect signatures. (Ex. B Dkt. 2-2 ¶¶ 23, 28.)

Likewise, even taking into account these orders, this approximately five-week time period has not been shown to be a burden on the 18 months Reclaim Idaho had to collect signatures or even the six-month period it voluntarily chose.

The Orders to Self-Isolate cannot be the basis of a First Amendment claim. The Supreme Court has been clear that the exercise of "all rights" are subject to "reasonable conditions" deemed "essential to the safety, health, peace, good order, and morals of the community." *Jacobson*, 197 U.S. at 26. Such a condition must

have a substantial relation to public health, and not be "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 31. The at-issue Orders were neutral laws of general applicability that had a clear and substantial relation to public health, slowing the spread of a pandemic.

Appellees have not met their burden to show they were reasonably diligent in getting the initiative on the ballot. Even if this Court applies the framework from *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) and *Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006), the recent Arizona case, *Arizonans for Fair Elections v. Hobbs*, No. CV-20-00658-PHX-DWL, 2020 WL 1905747 (D. Ariz. Apr. 17, 2020), is instructive. In that case, the court concluded that the plaintiffs had not shown that a reasonably diligent proponent could not gain a place on the ballot. *Id.* at *11.

The State has already outlined how Reclaim Idaho was not diligent. Unlike the plaintiffs in the *Fair Maps Nevada v. Cegavske*, Reclaim Idaho failed to take action before the expiration of the deadline to get their initiative on the ballot this year. *See Fair Maps Nevada v. Cegavske*, No. 3:20-cv-00271-MMD-WGC, 2020 WL 2798018 (D Nev. May 2, 2020). Appellees simply have not shown that no reasonably diligent initiative proponent could have managed to qualify for the ballot.

Appellees never inquired whether they could gather signatures under the Orders to Self-Isolate, which incorporated federal standards that allowed "Elections personnel to include both public and private sector elections support" to continue to

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 13

operate during the term of that Order. *See* Ex. F (April 2, 2020 Amendment to March 25 Stay-Home Order), ¶¶ 8.f and 8.k (incorporating the Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response issued by the Cybersecurity Infrastructure Security Agency of the United States Homeland Security ("CISA Guidance") dated March 28, 2020). The existence of this exemption further demonstrates the absence of any intrusion on Reclaim Idaho's rights by any action of the State.

And, as explained below, the remedy fashioned by the district court is beyond what is permissible on the eve of an election in these extraordinary circumstances.

**B.      This Case Raises Serious Questions of Law.**

A stay is also appropriate because this case raises serious questions about whether and when a federal district court can rewrite a state's election laws. Requiring the State to implement the Court's selected remedy of electronic signatures impinges on the State's power to control its elections. *Cf. Esshaki v. Whitmer*, No. 20-1336, 2020 WL 2185553 at *2 (6th Cir. May 5, 2020). If the State is forced to put the initiative on the ballot, its legislatively enacted procedures for ensuring voter integrity and those that balance the voters' voice throughout the State will be eviscerated. Forcing the State to implement electronic signature gathering, fundamentally alters and rewrites its initiative and election procedures: requiring the State to accept electronic signatures after the deadline without the ability to verify

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 14

qualified elector status as compared to physical signatures, (*see* Dkt. 11-2); imposing an exceptional, if not impossible, burden on clerks' offices around the state to attempt to verify the signatures presented to them in mid-August, (*see*, *e.g.*, Dkt. 11-3); and eliminating the statutory process to allow public argument and rebuttal, which by law is required to be complete by August 1, 2020, *see* Idaho Code §§ 34-1812A, 1812B.

Reclaim Idaho did not meet its burden to obtain a mandatory injunction. Fed. R. Civ. P. 52(b), 65(d)(1). Mandatory injunctions order a "party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). "[A] mandatory injunction 'goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Courts should deny requests for mandatory injunctions "'unless the facts and law clearly favor the moving party.'" *Id.* To put it differently, the "burden here is doubly demanding: Because [Plaintiffs] seek[] a mandatory injunction, [they] must establish that the law and facts *clearly favor* [their] position, not simply that [they are] likely to succeed." *Id.*

A mandatory injunction is not permissible where, as here, the alleged constitutional violation has ceased. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Reclaim Idaho asked the district court to provide relief based upon Stay-Home Orders that were rescinded as of April 30th, more than a month before plaintiffs filed

EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
FOR STAY PENDING APPEAL - 15

suit. (Dkt. 1, ¶¶ 38-40; 46.) Rather than timely seek relief, Reclaim Idaho took no action while the orders were in force. The relief they are requesting is retroactive in nature. But the *Ex parte Young* exception to the Eleventh Amendment only allows federal courts to grant prospective injunctive relief "to prevent a continuing violation of federal law." *Green,* 474 U.S. at 68 (citation omitted). In contrast, the U.S. Supreme Court has "refused to extend the reasoning of *Young*[ ] to claims for retrospective relief." *Id.* (citations omitted). Nor are declaratory judgments generally available in circumstances such as this case. *Id.* at 73-74.

For these reasons, the first stay factor has been met.

## C.     The Irreparable Injury, Balance of Harm, and Public Interest Factors Favor a Stay.

Unless a statute is unconstitutional, enjoining a "State from conducting [its] elections pursuant to a statute enacted by the Legislature . . . would seriously and irreparably harm [the State]." *Abbott v. Perez*, ___ U.S. ___, 138 S. Ct. 2305, 2324 (2018). The remedy presented by the district court will enjoin Idaho law, create confusion amongst Idaho voters, and put at significant risk the State's ability to prepare for, and thus the integrity of, the upcoming August and November elections. If the State must implement the remedy the district court has proposed, there will be an irreparable injury to the voting system established by the Legislature, which will be disregarded in favor of the system established by the district court.

By requiring that Reclaim Idaho's initiative process be changed to electronic signatures, Idaho's requirement of district and voter representation found in Idaho Code § 34-1805 will be eviscerated. The processes chosen by the Idaho Legislature to ensure voter integrity, as applied to the circulators, the county clerks, and the Secretary of State will also be enjoined. Idaho Code § 34-1807; *see also* Idaho Code § 34-1802. By requiring another 48 days to gather signatures, and allowing gathering of signatures electronically, the district court enjoined multiple provisions of Idaho law, and created an extremely burdensome, if not impossible, timeline for the county clerks. Specifically, granting another 48 days for Reclaim Idaho to gather signatures *and* requiring Idaho to accept electronic signatures will enjoin enforcement of Idaho's May 1, 2020 deadline, Idaho Code § 34-1802(2); and enjoin enforcement of Idaho's requirement for the circulator to collect signatures on a sheet and certify that such was done in his or her presence, Idaho Code § 34-1807(1). It will place an exceptional burden on the county clerks to verify, to the extent they can, signatures submitted in a matter of few weeks, during a pandemic and during preparations for the August and November elections, when they normally have sixty days to do such verification. *See* Idaho Code § 34-1802; Dkt. 11-3. It will remove certification and verification factors that the State used in the recent mail-in primary election. (Dkt. 11-2.) And it will effectively eliminate the argument for and against the initiative

that Idaho law requires by July 20, as it will be unknown until late August or September whether the initiative has qualified.

Other courts recognize the merits of the in-person signature requirement and the irreparable injury from changing a procedure so close to the election. The Sixth Circuit in *Thompson* recognized that it is the states that "have the ability to choose among the many permissible options when designing elections." *Id.* 959 F.3d at 812. It noted that the concerns in that case were magnified because the procedure offered by the plaintiffs threatened "to take the state into uncharted waters." *Id.* Because electronic signatures, even if they proved workable, could "also post serious security concerns and other, as yet unrealized, problems," the court noted that the choice to adopt electronic signatures was with the state officials, not the courts. *Id.* The court also recognized the Supreme Court's warning to not change state election rules as the election approach. *Id.* at 813 (citing *Republican Natl. Comm.*, ___ U.S. at ___, 140 S. Ct. at 1207; *Purcell*, 549 U.S. at 4-5). The Nevada U.S. District Court likewise took into consideration the *Purcell* principle in the *Fair Maps Nevada* case. *Fair Maps Nevada*, 2020 WL 2798018 at *16. It held that Nevada's in-person requirement survived strict scrutiny by being narrowly tailored to achieve the state's compelling interest of fraud prevention. *Id.* at *16-17.

The State is enjoined from effectuating the voting system provided by Idaho law and enacted by the Idaho Legislature, which is irreparable injury. *Maryland v.*

*King*, 133 S. Ct. 1 (2012) (Roberts, C.J., in chambers);; *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) ("it is clear that a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined."). Absent a stay, Idaho's electoral system will be disrupted and displaced. *Cf. Lair v. Bullock*, 697 F.3d 1200, 1214-15 (9th Cir. 2012) ("[B]ecause of the likely disruption to the election and the untold, irreversible consequences that might result, the State of Montana has satisfied its burden of showing a probability that irreparable harm will occur."). Irreparable injury exists because Idaho's process will be replaced with a judicially-created procedure.

In balancing the harms, the Court should consider equitable principles. *See Lair*, 697 F.3d at 1215. Any harm Reclaim Idaho might incur by a stay of the district court's order is largely attributable to Reclaim Idaho. It controlled the timing of its actions throughout the initiative process. Any perceived harm to Reclaim Idaho is due to its own lack of diligence in failing to bring this matter to the courts before the deadline for filing signatures. Moreover, Reclaim Idaho's substantial delay has rendered it impossible to grant it an extension without thoroughly interfering with Idaho's election process.

"Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell*, 549 U.S. at 7. The State has a strong interest in ensuring that Idaho's citizens have an electoral system they can be

confident in. Idaho Const. art. III, § 1. The Idaho Legislature, concerned by its finding of "incidents of fraudulent and misleading practices in soliciting and obtaining signatures on initiative … petitions" as well as finding that false signatures had been made on such petitions, sought to ensure that an integral election system existed. Idaho Code § 34-1801.

Idaho balances the ability of the initiative proponent to circulate the petition and gather signatures, with the ability of the county clerks to verify signatures, so that the Secretary may certify the geographic scope; collect arguments for or against the initiative; and inform Idaho's households of the initiative and the arguments advanced by competing sides. Online signatures will replace this process to ensure that integrity, and will set aside the balance the Idaho Legislature struck. The balance of harms and the public interest favor a stay.

## <u>CONCLUSION</u>

The Court should grant a stay. If the Court denies the requested stay, it should grant a stay for the period of time necessary to seek a stay from the Supreme Court.

Respectfully submitted,

_____/s/ Robert A. Berry_____
ROBERT A. BERRY, ISB #7442
Deputy Attorney General
Statehouse, Room 210
Boise, ID 83720
*Attorneys for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 1, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Robert A. Berry*
ROBERT A. BERRY