## No. 20-35584

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

RECLAIM IDAHO, an Idaho Political Action Committee, and
LUKE MAYVILLE,

*Plaintiffs-Appellees*,

v.

BRADLEY LITTLE, in his official capacity as Governor of Idaho,
and LAWERENCE DENNEY,
in his official capacity as Idaho Secretary of State,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the District of Idaho
Honorable B. Lynn Winmill
District Court Case No. 1:20-cv-00268-BLW

_____

## APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS' EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL

_____

Deborah A. Ferguson
Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho, 83702
T: (208) 484-2253
daf@fergusondurham.com
chd@fergusondurham.com
*Attorneys for Plaintiffs-Appellees*

**INTRODUCTION**

After reading the State's emergency motion for a stay, one might be left with the impression that a rogue federal judge has rewritten Idaho's election code based on a whim, dictating how Idaho must henceforth conduct its elections. One would be forgiven for having that impression, but it couldn't be further from the truth.

This case is not a broadside to Idaho's election laws. It is an *as-applied* challenge to a select few statutory provisions that govern signature gathering for citizen initiatives – and to the Governor and Secretary of State's strict enforcement of those provisions – during the exceptional circumstance of a global pandemic. It was brought by *one* grassroots group, pursuing *one* initiative, seeking *temporary* accommodation to remedy the violation of its First Amendment rights for this election cycle only. It would extend no further. That group, Reclaim Idaho, was well on its way to qualifying its initiative when the pandemic, together with the Governor's stay at home orders, required that the efforts of its volunteers in the field come to an abrupt halt.

Accurately recognizing these facts, Judge Winmill ordered a reasonable accommodation to remedy the constitutional violation, allowing Reclaim Idaho to wrap up its collection of the statutorily required number of signatures from the statutorily required number of geographical districts, but also allowing the group to do so electronically rather than through in-person signature gathering. This

1

decision balanced the State's interests in requiring a citizens' initiative to have a legislatively defined amount of support from the electorate while retaining Reclaim Idaho's First Amendment right to attempt to get its initiative on the ballot during a public health crisis. If it is successful in that endeavor, that would only mean that the voters of Idaho would have an opportunity to consider the initiative in the November election. If the initiative were on the ballot, then a matter of core political concern would be debated statewide.

The State cannot meet the requirements for granting an emergency stay of the District Court's order. The State is not likely to succeed on the merits because it will not be able to show that the District Court abused its discretion in fashioning tailored relief for this First Amendment violation. On the other hand, if the Court were to grant the State a stay, Reclaim Idaho would be irreparably harmed because a stay would stop the initiative in its tracks. This Court should deny the motion.

## STATEMENT OF THE FACTS

Reclaim Idaho is a grassroots movement driven by passionate and non-partisan volunteers who have broad support. *See*, *generally*, David Daley, *Unrigged: How Americans are Battling Back to Save Democracy*, pp. 23-34, (2020). This election cycle it is seeking to put before the voters its Invest in Idaho initiative, an option to increase funding in K – 12 education in a state that ranks second to last in school funding per capita. (Ex. 4, Mayville Decl., ¶ 4; Ex. A to

Ex. 8, Lansing Decl.)[1] Reclaim Idaho modeled its petition circulation and signature-gathering strategy on its previously successful initiative in the 2018 cycle called "Medicaid for Idaho." (Ex. 4, ¶¶ 4-15.) By mid-March, it was ahead of the pace of its 2018 campaign, with over 30,000 signatures collected of the 55,057 it needed. (Ex. 4, ¶¶ 17-18.) Experience showed that it would have reached the statutory threshold had the public health crisis not occurred. (Ex. 5, ¶ 45.)

The State's motion omits several critical facts found by the District Court and downplays others. The District Court found the relevant facts as follows:

> Reclaim Idaho used the successful model it developed for the Medicaid petition to organize its Invest in Idaho initiative drive. *Id*. The model included "early stage" volunteer recruitment events, where the group worked to build teams in Idaho's legislative districts. *Id*. at 4–5. The model also included a plan to gradually scale up signature collection efforts in the final months before the May 1, 2020 submission deadline. *Id*. at 5. According to declarations submitted in support of the motion, the gradual scaling of Reclaim Idaho's efforts reached "critical mass" in early March 2020—the surge in volunteers and favorable springtime weather and daylight hours was anticipated to boost its organizing efforts in the final stages of its drive. Silver Decl., Dkt. 2-4 at 4.

> According to its model, Reclaim Idaho began its initiative drive in September 2019. Schroeder Decl., Dkt. 2-3 at 3. Reclaim Idaho held twenty-five volunteer organizing meetings and signature gathering events between September 14, 2019 and December 15, 2019. Id. at 2–3. Reclaim Idaho held five more events between the first of the year and January 3, 2020 [*sic.* February 3, 2020]. *Id*. at 4.

---

[1] The exhibits attached to this Response are part of the record in the District Court.

Thereafter, Reclaim Idaho's organizing leaders held signature gathering events in their own districts throughout the month of February and into early March. Id. In some districts, such as District 4, Reclaim Idaho held a signature gathering event each week. *Id*.; see also Prince Decl., Dkt. 2-5 at 2.

These efforts slowed with the news of the COVID-19 pandemic. Dkt. 2-3 at 4–5. During the week of March 8, 2020, Reclaim Idaho's leadership began to communicate with its local volunteer leaders regarding a set of guidelines it developed for safer signature collection. *Id*. Around that time, the Centers for Disease Control (CDC) issued guidance to curb the spread of the novel coronavirus. *Id*. at 5. Maintaining a distance between oneself and others of at least six feet was – and still is – one of the CDC's main recommendations to prevent the spread of the virus. *See id*. Provided this guidance and rising health concerns voiced by its volunteers, Reclaim Idaho cancelled all door-to-door canvassing events and signature gathering efforts at larger public events on or around March 18, 2020. *Id*. at 8.

(Memorandum Decision and Order, Exhibit 1, pp. 5-7.)

Two days *before* Reclaim Idaho finally determined that it had no option but to suspend (not terminate) its canvassing, it approached the Governor and the Secretary of State seeking an accommodation. What the State continues to dismiss as mere communication between "staffers" in which Reclaim Idaho "requested a meeting between Reclaim's founder and the Governor" (Em. Mot., pp. 7-8) was quite a bit more than that. Reclaim Idaho's public relations direction, Rebecca Schroeder emailed Andrew Mitzel, a Senior Advisor to the Governor on the morning of March 16. (Ex. 1, p. 8.) The back and forth that day with state officials

showed Reclaim Idaho's concern about the potential negative health effects involved in in-person signature gathering on its volunteers, many of whom were retirees, and the public. (*Id*., at 8-9.) Ms. Schroeder indicated that Reclaim Idaho had already collected over 30,000 signatures and was "well on [its]way to qualifying the initiative." (Ex. 5, ¶ 32.) Mr. Schroeder wrote that "Idahoans are no longer able to exercise their constitutional right to bring forward a ballot initiative." (*Id*.) She informed Mr. Mitzel that "extraordinary situation requires action by the Governor to ensure the public safety is maintained" while Reclaim Idaho exercised its Constitutional rights. (*Id*.) In one email, she wrote that electronic signature gathering is "the only safe method at this point." (*Id*., at ¶ 33.)

Mr. Mitzel referred her to the Secretary of State. (Ex. 1, p. 9.) Ms. Schroeder responded that the Secretary of State's office had "advised that it would take Legislative or Executive action to extend the signature deadline." (*Id*.) Mr. Mitzel responded with a definitive answer: "the Governor's Office has no intention of taking executive action on this matter." (*Id*.) Similarly, the Secretary of State's Office wrote that "we are sorry to say that there is no statute allowing electronic signatures for petitions in Idaho Statutes 34 Chapter 18." (*Id*. at 10.)

A few days later, on March 25, the Governor issued an executive order requiring all Idahoans who were not essential workers to stay at home. (Ex. 1, pp. 7-8.) He extended the order to April 30, which would have also been the deadline

5

for Reclaim Idaho to provide all signatures to county clerks. (*Id*.) There was no exception for First Amendment activities like signature gathering for initiatives. (*Id*. at 8.)[2]

Despite the Governor's response that he would "take no executive action" on Reclaim Idaho's request, he did take other executive action to alter election rules during the pandemic. He issued an emergency proclamation that "provided for all-absentee voting in the 2020 primary elections due to COVID-19." (Ex. 1, p. 22.) He "worked with the Secretary of State to suspend certain statutory requirements" including extending various deadlines. (*Id*.) (Ex. 13).

*The District Court's Ruling*

The District Court granted Reclaim Idaho's motion for a preliminary injunction from the bench. (Dist. Ct. Dkt. 13.) It followed with a written Memorandum Decision and Order four days later. (Ex. 1.)

Applying the constitutional framework from *Angle v. Miller*, 673 F.3d 1122, 1132 (9th Cir. 2012), the District Court concluded that the circumstances created by COVID-19, the State's refusal to accommodate Reclaim Idaho, and the

---

[2]    For the first time on appeal, the State suggests that an obscure exception to the Governor's order for "[e]lections personnel to include both public and private sector elections support" may have allowed Reclaim Idaho to continue gathering in-person signatures. (Em. Mot., pp. 13-14.) The State does not explain how volunteers with a grassroots organization who are canvassing to get an initiative on the ballot are "elections personnel" or "private sector support".

6

Governor's stay-at-home orders severely burdened Reclaim Idaho's First
Amendment right to make its initiative the focus of statewide discussion by getting
it on the ballot. (Ex. 1, p. 18.) The Court further found that "[o]nce the group
started its drive, there is no real argument to diligence in effort." (*Id*. at 20.) Strict
scrutiny was necessary. (*Id*.) The Court determined that Reclaim Idaho had
"established it is likely to succeed on the merits, it will suffer irreparable harm in
the absence of preliminary relief, the balance of the equities tips in its favor, and an
injunction is in the interests of the public." (*Id*. at 25.)

As to the remedy: the District Court initially gave the State two options.
First, based on the evidence that showed Reclaim Idaho was well on its way to
meeting the statutory requirements when it was shut down, the State could choose
simply to certify the initiative. (Ex. 1, p. 26.) Or, the State could reopen and extend
the deadline for gathering signatures by the period that Reclaim Idaho had lost – 48
days – and permit Reclaim Idaho to circulate its petition electronically and to
accept electronic signatures. (*Id*. at 27.) The District Court gave the State four days
to decide, until 5:00 p.m. on June 26. (*Id*. at 28.)

The State used all that time to choose neither option. Two hours before its
deadline, it filed a "Notice and Motion to Stay Pursuant to F.R.C.P. 62(d) and
F.R.A.P. 8." (Dist. Ct. Dkt. 14.) It informed the District Court that "neither option

is acceptable to the Governor nor the Secretary of State." (*Id*. at 2.) It asked the District Court to stay its order while it appealed to this Court. (*Id*. at 14.)

The District Court denied the State's motion to stay. (Ex. 2.) Immediately thereafter, Reclaim Idaho moved to enforce the Court's order, noting that the State's "clear response shows that they have no intention of cooperating with Reclaim Idaho or complying with the Court's order." (Dist. Ct. Dkt. 18.)

The District Court granted that motion in part. (Ex. 3.) It directed "the State to immediately begin implementation of the remedy originally requested by the Plaintiffs –online solicitation and acceptance of signature." (*Id*. at 3.) It relied on Reclaim Idaho's contact with DocuSign, "a company trusted by financial institutions with an impeccable tradition for reliability in gathering electronic signatures," which is ready to provide its service immediately. (*Id*.) It ordered that the parties meet and confer "to implement the process and protocol for accepting signatures gathered through the DocuSign technology." (*Id*. at 4.)

The District Court gave the parties until July 9, 2020, to come to an agreement on process and protocol, after which Reclaim Idaho may "resume the solicitation of signatures for a period of 48 days." (*Id*.) Should the parties not agree, Reclaim Idaho "may implement an industry standard process and protocol" that ensures the "highest available standards are used to verify a signer's identity, legislative district, and the authenticity of the signature." (*Id*.)

## LEGAL STANDARDS

A district court's decision regarding preliminary injunctive relief is subject to limited and deferential review. *Puente Arizona v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016); *Harris v. Board of Supervisors, L.A. County*, 366 F.3d 754, 760 (9th Cir. 2004). The court should be reversed only if it abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *Puente Arizona*, 821 F.3d at 1103.

A stay pending appeal, moreover, is "an intrusion into the ordinary processes of administration and judicial review" and "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 427 (2009). This Court exercises "restraint in assessing the merits of either a preliminary injunction appeal or a request to stay that injunction, *Sierra Club* [*v. Trump*, 929 F.3d 670,] at 688 [(9th Cir. 2019 )], but particularly so when considering the 'extraordinary request' to stay a preliminary injunction granted by a district court." *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1264 (9th Cir. 2020) (citing *Barr v. E. Bay Sanctuary Covenant*, 2019 WL 4292781, at *1 (Sept. 11, 2019) (Sotomayor, J., dissenting from grant of a stay).

The party seeking a stay pending appeal "must show that irreparable harm is probable" and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on

the merits and that a balance of hardships tips sharply in the petitioner's favor."

*Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citation omitted).

## THE STATE WILL NOT BE IRREPARABLY HARMED IN THE ABSENCE OF A STAY

The State claims that "[u]nless the district court's Order is stayed on or before July 9, Idaho will be forced to abandon statutory requirements that ensure the integrity of its initiative process, attempt to comply with the Order's unrealistic demands, and significantly change its election schedule." (Em. Mot., p. 4.)

July 9 simply marks the date on which Reclaim Idaho may *begin* circulating its petition online and collecting electronic signatures. There is no harm to the State, much less irreparable harm, by allowing Reclaim Idaho to open its 48-day window of gathering e-signatures. This case can proceed as scheduled without the necessity of a stay before July 9. There is no immediate threat to the State of irreparable harm. *See*, *e.g.*, *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (noting that the movant "must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.") (Emphasis in original).

Some county clerks will need to re-start expeditiously processing already gathered physical signatures as well as e-signatures as they are delivered in

batches.[3] But this is the work that they would have been required to do a few months earlier. It may be an administrative inconvenience, but it is not the type of irreparable harm that the extraordinary remedy of a stay seeks to halt. In a recent case with a similar procedural posture, this Court held that "any administrative burdens the government faces in implementing the injunction are either not irreparable harm of the kind that could justify a stay pending appeal, or, 'minimal' harm ..." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020) (citing *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017)).

After giving the State an option of certifying the petition, which it declined, the District Court did not order that the initiative be placed on the ballot. Its order instead gives Reclaim Idaho a chance to qualify while still complying with all the State's statutory provisions, save for moving the deadline and one modification for electronic signature gathering. Reclaim Idaho must still gather the verified signatures of 6% of total registered voters in Idaho and 6% of the registered voters in 18 legislative districts, just as statute requires. These are among the strictest

---

[3]     Reclaim Idaho had approximately 10,000 signatures already verified, and another 20,000 ready to be verified by the county clerks, when its campaign was suspended. It had provided Ada County, the State's largest, with about half of the latter number, beginning in November of 2019 and again in batches on December 17, January 22, February 4, and March 11. (Ex. 12, 2nd Supp. Mayville Decl., ¶¶ 2-7.) None of those signatures have been returned by Ada County as verified.

requirements in the country. (Ex. 1, p. 26.) The State erroneously implies that the Court has trampled all over its numerical and geographical requirements.[4]

The District Court's order does not "fundamentally alter the nature of the election." (Em. Mot., pp. 4, 14.) The order instead allows Reclaim Idaho an opportunity to get its initiative before the people for them to vote on it in November. The order addresses one part in the initiative process, which is itself one step in a long journey to get on the ballot. If Reclaim Idaho is successful, then all that happens is that the voters get to decide.

*The Purcell Principle is Inapplicable*

Nor did the District Court order any changes to the electoral process "on the eve of the election." (Em. Mot., p. 14.) This is why the State's heavy reliance on the "*Purcell* principle" is misplaced. (Em. Mot., pp. 11, 18, 19.) Reclaim Idaho has no quibble with the general principle that "lower federal courts should ordinarily not alter election rules on the eve of an election," *Republican Natl. Comm. v.*

---

[4]     The State writes, "[i]f the State is forced to put the initiative on the ballot, its legislatively enacted procedures for ensuring voter integrity and those that balance the voters' voice throughout the State will be eviscerated." (State's Motion, p. 14.)

No one is "forcing" the State to put the initiative on the ballot. What's more, it is difficult to see how using a 21st-century method used by financial institutions worldwide for accuracy in verifying digital signatures could be a *less* reliable method of preventing fraudulent signatures ("voter integrity") than comparing voters' "wet" signatures through a "we-know-it-when-we-see-it" standard. One is equally hard-pressed to understand how the "balance of voters' voice throughout the State will be eviscerated" when Reclaim Idaho *must still comply with the statute's geographical distribution requirement* under the judge's order.

*Democratic Natl. Comm.*, 140 S. Ct. 1205, at 1207 (2020). But in both *Purcell* (decided on October 20 before a November 7 election) and *RNC v. DNC* (decided on April 6 before an April 7 primary election), the election was imminent. *See Purcell v. Gonzalez*, 549 U.S. 1, 3 (2006); *Republican Natl. Comm.,* 140 S. Ct. at 1206. The relief in this case was ordered four and a half months before the election. That is not the "eve of the election."

*Purcell,* and the more recent case of *RNC v. DNC*, both dealt directly with voting procedure, and both were concerned with voter confusion. *See generally Purcell*, 549 U.S. 1; *Republican Natl. Comm.,*140 S. Ct. 1205. A modification to a state's actual voting rules and procedure on or near election day might cause "voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. 1 at 4-5. The relief sought in this case would have no such effect. If the District Court's order stands, the way that citizens vote on election day would be unchanged. The State never explains how a single initiative on the ballot could lead to "voter confusion," or how that result would reduce turnout for the general election. The severe burden on Reclaim Idaho's First Amendment rights outweighs any consideration of harm to the State as set out in *Purcell*.

In the absence of any irreparable harm, this Court can safely stop here.

## THE STATE IS NOT LIKELY TO SUCCEED ON THE MERITS AND THE PUBLIC INTEREST WEIGHS HEAVILY AGAINST A STAY

The State must also demonstrate that it is likely to succeed on the merits. That means it must show that this Court will probably conclude that the District Court abused its discretion. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011) (applying the abuse of discretion standard when reviewing the grant or denial of preliminary injunction relief). This Court looks to "whether the trial court identified the correct legal rule to apply to the relief requested," and, also, whether the district court's application of the correct legal standard was "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). As an added gloss, the Court's review of preliminary injunctive relief is limited and deferential. *Puente*, 821 F.3d at 1103.

The District Court relied on the correct standard from *Angle*, was judicious and measured, and its remedy was tailored to fix the constitutional violation while also accounting for the State's interests. It did not abuse its discretion.

### *The District Court's Decision on the Merits is Sound*

Reclaim Idaho's First Amendment rights were violated, and the State offered no remedy, let alone a narrowly tailored one. Citizens have a First Amendment right in the context of an initiative drive (1) to communicate with their fellow citizens about matters of political concern, and (2) to employ the state's initiative

process to make matters of political concern the focus of statewide discussion by trying to get them on the ballot. *See Meyer v. Grant*, 486 U.S. 414, 421-22 (1988) (describing this as "core political speech."); *see also Angle v. Miller*, 673 F.3d 1122, 1132 (9th Cir. 2012). When restrictions impinge on political speech, like here, First Amendment protection "is at its zenith." *Meyer*, 486 U.S. at 425. "Under the First Amendment, election "[r]egulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Prete v. Bradbury*, 438 F.3d 949, 961 (9th Cir.2006) (quoting *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1007 (9th Cir. 2003)). Here the State is subject to strict scrutiny.

The State first repeats its argument regarding a lack of justiciable standing that the District Court squarely rejected below. Reclaim Idaho explored all avenues to continue collecting signatures even when the coronavirus was ramping up in the state before contacting the Governor's and Secretary of State's offices. It was seeking the use of electronic signatures, so that it could continue safely. Its concerns were dismissed outright. After that, it was forced to suspend its initiative drive. The State's strict application of its statutory requirements, and the impossibility of complying with those requirements in the unique circumstances of an unprecedented pandemic, is state action that caused Reclaim Idaho's injury. There was no abuse of discretion by the District Court in so finding.

15

The State conceded below that *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), provides the appropriate test. (*See* Dist. Ct. Dkt. 8, pp. 8-9.) *Angle* looks to the party's diligence in trying to comply with a state's initiative requirements and the extent of the burden on their ability to do so. *Id*. at 1132. The overwhelming evidence presented to the District Court supports its finding that "[o]nce the group started its drive, there is no real argument to diligence in effort." (*Id.* at 20.) It turned aside the State's argument, which it repeats here, that Reclaim Idaho's failure to use the full 18 months allotted to it by statute somehow showed a lack of diligence. As the District Court found, constitutional "rights exist throughout the duration of the petition circulation process, whether on the first day or in the last months." (Ex. 1, p. 15.) Reclaim Idaho could not have predicted that a pandemic would strike, and it "began collecting signatures as soon as their data from a previous successful campaign suggested they do so." (*Id*. at 20.)

The District Court's finding that the State's action significantly inhibited Reclaim Idaho's ability to get its initiative on the ballot is likewise a proper exercise of its discretion. The District Court correctly concluded that "the State's refusal to make reasonable accommodations inhibited Reclaim Idaho's ability to place the Invest in Idaho initiative on the November 2020 general election ballot." Reclaim Idaho's inability to qualify this initiative for the ballot, without injunctive relief, strikes at the heart of its core political speech. *See Meyer*, 486 U.S. at 425.

16

*The District Court's Remedy is Sound*

The State also attacks the District Court's injunctive relief as an overreach. It writes, "[f]orcing the State to implement electronic signature gathering fundamentally alters and rewrites its initiative and election procedures ..." (Em. Mot., p. 14.)

The District Court's order neither "fundamentally alters" nor "rewrites" the State's initiative and election procedures. It temporarily enjoins strict enforcement of one aspect – in person signature gathering – of one part of the initiative process, which is itself but a small part of the State's "election procedures," and it gives Reclaim Idaho back the time it lost. And it does so for this election cycle only. It does so because of the extraordinary circumstances that we are all living under.

The order does not change anything about how the State will conduct its November election. It does not require the State to enact Reclaim Idaho's initiative as law or even place it on the ballot. Reclaim Idaho must still comply with Idaho's stringent requirement regarding percentages of registered voters, both statewide and in 18 legislative districts. It may do so now with electronic signatures rather than "wet" signatures for the remaining needed signatures, which is eminently reasonable in a pandemic.

True, this one time for this one initiative, the county clerks will not need to match physical signatures with voter registration signatures on file for the half not

17

yet collected. But using state-of-the-art electronic signature gathering from a reliable national firm that verifies 750,000 signatures a day is a solid temporary fix. (Ex. 4, ¶ 45.) DocuSign will not "run the election." It is merely a technology for the verification of the signatures Reclaim Idaho collects, nothing more. If anything, it reduces the burden on the clerks and would have greater accuracy in rooting out ineligible signatures.

The State suggests that the District Court's injunction is a "mandatory" one rather than a "prohibitive" one and needs a higher showing. (Em. Mot., p. 15.) It did not argue this in the District Court in its Opposition to Plaintiffs' Motion. (Dist. Ct. Dkt. 8.) It instead raised the issue for the first time in its Motion to Stay. (Dist. Ct. Dkt. 16, p. 7.) It should not be heard to argue now that the District Court erred under a standard that it did not present to that court before it had ruled. *See, In re Mortg. Elec. Registration Sys., Inc.*, 754 F.3d 772, 780 (9th Cir. 2014) ("arguments not raised in the district court will not be considered for the first time on appeal.").

In *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), this Court noted that separate standards for mandatory and prohibitory injunctions are controversial. *Id.* at 997. Recognizing it was bound by precedent, the Court acknowledged "the complexities of the problem, the lack of clear authority as to how the distinction is implemented, and the inherent contradictions underlying the somewhat artificial legal construct ..." *Id.* at 998.

Still, Reclaim Idaho contends that the order in this case is prohibitory, but it satisfies either standard. Mandatory injunctions are permissible when "extreme or very serious damage will result" that is "not capable of compensation in damages," and the merits are "not doubtful." *Hernandez*, 872 F.3d at 999. If the District Court did not grant this relief, there is no doubt that Reclaim Idaho loses its First Amendment right. It would have had no chance to get its initiative on the ballot. It was extraordinarily diligent in circulating its petition and gathering signatures. The circumstances of the pandemic, the State's refusal to grant any accommodation, and the Governor's stay-at-home order, made it impossible to continue safely.

District courts have considerable discretion in fashioning equitable relief. *Tanner Motor Livery*, *Ltd*. v. *Avis*, *Inc*., 316 F.2d 804, 809 (9th Cir. 1963). Mandatory injunctions are most likely to be appropriate when "the status quo ... is exactly what will inflict the irreparable injury upon complainant." *Hernandez*, 872 F.3d at 999 (citation omitted). The status quo inflicted the injury on Reclaim Idaho. The District Court's remedy balanced all the interests at stake. It is a sensible and temporary solution that should be left undisturbed.

### It is in the Public Interest for this Political Speech to be Heard

The public interest weighs heavily against a stay of the injunction. It is in the public interest to allow Idaho citizens an opportunity to engage in a robust debate on a matter of public importance such as funding for public schools. And, "it is

always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted).

## THE STATE CANNOT SHOW A SUBSTANTIAL CASE ON THE MERITS AND THE BALANCE OF HARDSHIPS TIPS HEAVILY IN RECLAIM IDAHO'S FAVOR

For many of the same reasons, there is not a substantial case to be made that Reclaim Idaho's First Amendment rights were not violated or that the Court's relief was not within its authority to order. But even if there were, the balance of hardships tips strongly in Reclaim Idaho's favor. Time is of the essence. Should this Court grant a stay, the signature drive would cease. If the Court granted a stay but then affirmed the District Court on the merits, there would be no time left for the injunctive relief to take effect and for the initiative to be placed on the ballot.

On the other side of the balance, the State would not be irreparably harmed absent a stay. It would only be required to continue accepting signatures from Reclaim Idaho and to do the other tasks that it would have been required to do under the statutory scheme while the appeal continues to the merits. Administrative burden is not the type of harm that calls for a stay. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1010 (9th Cir. 2020).

## CONCLUSION

Reclaim Idaho respectfully asks this Court to deny the State's request for an emergency stay pending appeal.

Submitted on this 5th day of July 2020.

>                        */s/Craig H. Durham*
>                        */s/Deborah A. Ferguson*
>
>                        Craig H. Durham
>                        Deborah A. Ferguson
>                        FERGUSON DURHAM, PLLC
>                        223 N. 6th Street, Suite 325
>                        Boise, Idaho 83702
>                        Attorneys for Appellees