Reclaim Idaho Exhibit No. 11

Supplemental Declaration of Luke Mayville

Deborah A. Ferguson
Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208) 724-2617
F: (208) 906-8663
daf@fergusondurham.com
chd@fergusondurham.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **RECLAIM IDAHO**, a political action committee, and **LUKE MAYVILLE**, <br><br> Plaintiffs, <br><br> v. <br><br> **LAWERENCE DENNEY**, in his official capacity as Idaho Secretary of State; **BRADLEY LITTLE**, in his official capacity as Governor of Idaho <br><br> Defendants. | Case No. 1:20-cv-00268-BLW <br><br> **SUPPLEMENTAL DECLARATION OF LUKE MAYVILLE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

I, Luke Mayville, having first been duly sworn upon oath, declare as follows:

1. My name is Luke Mayville, and I am a Co-founder of Reclaim Idaho, the plaintiff in this case. This is my supplemental declaration in support of a preliminary injunction.

Supplemental Declaration of Luke Mayville     1

2. Defendants argue that our campaign was dilatory on the grounds that we did not begin the signature-collection process a full 18 months before the deadline. My experience with grassroots political organizing—including the experience of our successful Medicaid Expansion signature drive in 2018—tells me that it is the final two months of a signature drive that are by far the most productive for signature gathering. This is because the looming deadline gives volunteers a sense of urgency, and they grow more committed and more efficient in their work. Meanwhile, supporters who had remained on the sidelines in the early months are motivated by that same sense of urgency to volunteer for the first time.

3. It is true that we would have collected more signatures had we began our signature drive several months earlier. But even with an early start, our drive still would have needed those precious final weeks in order to collect the required number of signatures. An early start would not have substituted for the loss of our final 48 days—days when the rate of signature collection was likely to accelerate dramatically.

4. In fact, we began our "Invest in Idaho" signature drive at a much earlier date on the calendar than we had begun our Medicaid Expansion signature drive. Our Medicaid Expansion signature drive did not begin until December of the year prior to the election (the petition was officially certified for circulation by the Secretary of State on December 5th, 2017). By comparison, we began our "Invest in Idaho" education initiative significantly earlier, in late October of the year preceding the election (certified by the Secretary of State on October 25th, 2019). When planning our "Invest in Idaho" drive, we chose to begin the process earlier in order to increase our chances of success.

5. However, we had learned from the Medicaid drive that the final months were by far the most productive for grassroots signature-collection, and we expected the pattern to be repeated

Supplemental Declaration of Luke Mayville    2

for our second initiative. Prior to the suspension of our "Invest in Idaho" signature drive, the pace of signature gathering very closely resembled that of our Medicaid Expansion drive, with our numbers ramping up dramatically beginning in late February and early March.

6. Defendants are very likely correct in their prediction that an earlier start would have yielded more signatures. But it would not have been enough. An early start would not have replaced those precious final seven weeks that were denied us.

7. Defendants also argue that our campaign lacked diligence on the grounds that we did not immediately file a court case prior to early June. Reclaim Idaho is a grassroots organization without a legal team or funding to hire legal representation. Since our inception, we have operated mainly on small donations of between $3 and $100. We began considering a lawsuit as early as March 16, 2020, which was the day we heard from the Governor's Senior Advisor Andrew Mitzel that the Governor did not intend to take action. At that point, we suspected that it was a violation of our rights to force us to choose between public safety and our constitutional right to petition our government. However, without legal know-how or funding to hire attorneys, we needed extra time to develop a plan for legal action.

8. As soon as we were able to articulate the outline of a legal argument, I immediately scheduled a meeting with Deborah Ferguson of Ferguson Durham PLLC for Monday, May 25th, 2020. Shortly thereafter, Ferguson Durham offered to represent Reclaim Idaho on a pro-bono basis. From that point forward, we worked swiftly with our attorneys and filed our case on June 6th, just twelve days after our initial meeting. Within the means at our disposal as a grassroots organization, we worked as swiftly as we could to file our motion.

9. Defendants argue that Reclaim Idaho willingly ended our signature drive on March 18th, prior to the March 25th Stay-at-Home order. In fact, we *suspended* our signature drive on March

Supplemental Declaration of Luke Mayville    3

18th but did not terminate all efforts to keep the effort alive. Between March 18th and the announcement of the Stay-at-Home order on March 25th, our campaign continued to explore potential means of safe signature gathering.

10. After several days of deliberating with our Bonner County volunteer team about the challenge of collecting signatures during a pandemic, one highly active volunteer named Rebecca Holland drafted a plan for safe signature gathering that she emailed to me and other members of our statewide team on March 19th. The plan (attached as an exhibit) directed volunteers to drop off packets of petitions at the homes of local teachers, who were encouraged in turn to find friends and family members to sign the petition and then bring all signed petitions to a local volunteer leader in order to be notarized.

11. Over the next several days, I discussed the plan at length with members of the Bonner County team. We discussed the practicality of the plan and whether we could possibly implement it statewide. We eventually concluded that the plan required extensive in-person contact and therefore posed too high a risk to the health of petitioners.

12. On March 20th, we sent out a survey to our statewide email newsletter. The first question was simply to ask whether our supporters and volunteers were okay in the midst of the rapidly escalating public health crisis. Our second question was the following:

13. *This past week we announced a suspension of our campaign for the Invest in Idaho ballot initiative. Do you have any ideas on how we might save the signature drive from being shut down by the coronavirus? [Note: We have already called on the Legislature to adjust the initiative rules; and we've already petitioned Governor Little to authorize online signature gathering. To date, neither the legislative majority nor the Governor is willing to take action].*

Supplemental Declaration of Luke Mayville     4

14. Close to 600 Reclaim Idaho supporters responded to the survey. Some recommended taking legal action, but none offered a clear plan for how we might build a legal case. Others urged us to collect electronic signatures or mail-in signatures, without providing a plan for how those signatures could be accepted as valid by the state. The most common response was merely to lament the unwillingness of the Legislature and Governor to take action, and many volunteers expressed hopelessness about the future of the Invest in Idaho initiative.

15. All the way up until the announcement of the Stay-at-Home order on March 25th, we continued to carry out discussions with volunteers and supporters about how the campaign might be resumed. Once the Stay-at-Home order was issued, however, it became absolutely clear that collecting signatures in-person would be impossible.

16. The Stay-at-Home order remained in full effect all the way through April 30th, which also happened to be the final day for collecting signatures. For the final 36 days before the official deadline, it was a misdemeanor in Idaho to engage in non-essential, in-person activities—including the collection of signatures.

17. Defendants have argued that electronic signatures are not necessary for the safe collection of signatures. "The State of Idaho," Defendants declare, "is already in Stage 4 of the recovery from the pandemic."

18. It is not at all clear what Defendants mean by the word "recovery." On Friday, June 19th, World Health Organization Director-General Dr. Tedros Adhanom Ghebreyesu announced that the global pandemic is accelerating rapidly. Dr. Tedros said: "The world is in a new and dangerous phase…We call on all countries and all people to exercise extreme vigilance."

Supplemental Declaration of Luke Mayville    5

19. In Idaho, at the time of this writing on June 21st, 2020, we have seen 528 new cases in the past five days. This is the largest spike in cases since the early peak of the outbreak in April. During the past month, 16 deaths were attributed to COVID-19 in Idaho.

20. All public health authorities are currently exhorting Idahoans to follow social distancing guidelines. On Tuesday, June 16th, during a statewide call-in with the AARP, Governor Little attributed the recent rise in COVID-19 cases to a failure of some Idahoans to follow guidelines to maintain social distance. (https://www.idahopress.com/coronavirus/worried-idahoans-quiz-little-about-rise-in-covid-19-cases/article_c519a4cd-f3c8-5fa4-9f92-33aa817c2635.html).

21. In seven of the counties where our signature drive was most active, our volunteer leaders are over the age of 60 and at heightened risk of contracting COVID-19. These seven counties account for 13 of the 18 districts where we expected to qualify our initiative.

22. We are certainly not in a period of "recovery" from the public health crisis brought about by COVID-19. In the summer of 2020, we continue to live in the midst of a once-in-a-century pandemic. If Reclaim Idaho is not provided with a safe, socially distant means of collecting signatures, we will again be forced to choose between our health and our constitutional right to petition our government.

23. Defendants have argued that our request to collect e-signatures using DocuSign would be "a fundamental departure from Idaho law and its Constitution." In making their case, Defendants have misconstrued the role of DocuSign in our proposed plan. We are not proposing that the private entity DocuSign will "run the election"—as Defendants repeatedly suggest. DocuSign is merely a technology for the verification of the signatures Reclaim Idaho collects, nothing more.

24. Under our proposal, the management of signature verification and the running of the election would remain entirely with the Secretary of State and the county clerks. Furthermore,

Supplemental Declaration of Luke Mayville    6

neither the DocuSign company nor its personnel would be the "circulator" of the petition. Designated Reclaim Idaho personnel—all of whom are residents of Idaho—would circulate the petition online. DocuSign would merely provide the technology required for the collection of authentic electronic signatures.

25. Regarding the authenticity of DocuSign signatures, it should be noted that the process of collecting e-signatures via DocuSign is not substantially different from the process used by the Idaho Secretary of State to receive absentee ballot requests online. In order to verify the identity of a person requesting an absentee ballot, the Secretary of State collects a driver's license number and the last four digits of a social security number. It is well within the capacity of a DocuSign platform to collect these same pieces of information for the purpose of authenticating electronic signatures. (see https://www.docusign.com/blog/can-i-see-a-photo-of-your-id-digital-verification-of-real-world-ids/)

26. Defendants have argued that the in-person requirement for signature gathering is important for the purpose of allowing citizens of Idaho "to exercise their legislative powers in an effective, valid, and informed manner." We fully agree with this principle. We are of the opinion that under ordinary conditions, the in-person requirement enhances the quality of civic engagement. This is why we are not requesting any permanent change to the in-person requirement. We are only requesting a temporary change in order to protect our First Amendment right during a once-in-a-century pandemic.

27. By Monday, June 22nd, the vast majority of Reclaim Idaho's verified signatures will be in the hands of the Secretary of State, and the vast majority unverified signatures will be *en route* to the offices of the county clerks. This means that a large portion of the required signatures will be available immediately for processing by the Secretary of State and county clerks.

Supplemental Declaration of Luke Mayville 7

28. Finally, I would like to suggest to the Court at least one alternative form of relief that would impose no burden on the Secretary of State and county clerks. Rather than permitting the collection of e-signatures with an extended deadline, the Court might simply reduce the requirements for the total amount of signatures and the geographic distribution of signatures, as has occurred in other states.

29. On March 14th, 2020, in response to COVID-19, the Governor of New York reduced the signature requirements for candidates seeking ballot access to 30% of the statutory thresholds. Likewise, this Court might temporarily reduce Idaho's required number of signatures to 2% (down from 6%) of the qualified electors of the state at the November 6th, 2018 general election; and the Court might require signatures from 2% of the qualified electors at the November 6, 2018 general election in each of at least 6 legislative districts (down from 18 legislative districts).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. EXECUTED ON this 21th day of June 2020.

/s/Luke Mayville

Supplemental Declaration of Luke Mayville    8

# K-12 Education Initiative with Reclaim Idaho

Citizens are scrambling to get enough signatures **before April 30** to qualify our ballot initiative. Statewide, we need 55,000 and we're currently now over 33,000. But we're unable to do face-to-face engagements due to COVID pandemic, so we're reaching out to educators to help us achieve this very important goal.

**FACT:** This Citizen-sponsored ballot initiative will raise $170-200 Million per year. That's around $600 for every student in public & charter schools awarded to their school district. Can you image the benefits for your school?

**LAW:** New "Quality Education Fund" will be established, when Citizens pass this initiative into law in November. The State Education Committee (?) will distribute funds directly to school districts for only these specified uses:
- Salaries for teachers and support staff
- Reduction of class sizes
- Classroom materials
- Full-day Kindergarten
- Art, music, drama programs
- Special education
- Career Technical Education

**NO** funding for administrative costs : "Moneys from the fund shall not be used to pay superintendents', principals' or other administrators' salaries or other compensation", by law proudly passed by Citizen lawmakers

**FUNDS:** Personal incomes above $250K per person or $500K per married couple, and from corporations by way of reinstatement to 2010 levels. This new funding has nothing to do with local property taxes or district levies. Only those at top of the income-ladder (estimate 5% population) will be impacted.

In 2019, Reclaim Idaho volunteers became Citizen Lawmakers passing Medicaid Expansion into law for Idaho residents. Now in 2020, we're working to increase State funding for K-12 Education a R E A L I T Y !!

# Urgent Action needed by Educators
# to help Reclaim Idaho
# put new State funding for K-12
# on November ballot

1- **Print 2 copies of petition** at www.reclaimidaho.org (need all 5 pages)

2- Ask another registered voter to help you. Each will **sign a petition** using black or blue ink. Next, print your legal name & address (where registered for voting) in a very legible manner (4th grade skill level)

3- **Find 11 friends to sign your petition** (with good social distancing). Tell them they will helping your school receive an additional $14,400 +/- for your classroom (based on the average of 22 students x $600 each). This is a dream that can come true for you ☺

4- **Call our local co-ordinator** (title?) Linda Larson at (208) 255-XXXX or email her at larson.linda.f@gmail.com to set-up time for delivering to her home in south Sandpoint (very convenient location )

5- **Sign in front of Linda** to verify the signatures. A table is set-up on her outside walkway for good distancing. She'll notorize petition at no charge.

6- **Deadline is Wed, April 29** to give to Linda in order for her to deliver to elections office by Thursday, April 30

# Reclaim Idaho
# here with some final pitch