# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RECLAIM IDAHO, an Idaho political action committee, and LUKE MAYVILLE, <br><br> Plaintiffs - Appellees, <br><br> vs. <br><br> BRADLEY LITTLE, in his official capacity Governor of Idaho, and LAWERENCE DENNEY, <br> in his official capacity as Idaho Secretary of State, <br><br> Defendants - Appellants. | **No. 20-35584** <br><br> D.C. No. 1:20-cv-00268-BLW <br><br> U.S. District Court for Idaho, Boise |

Appeal from the United States District Court for the District of Idaho
(Winmill, B. L. Presiding)

---

**REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL**

---

HON. LAWRENCE G. WASDEN
Attorney General

STEVEN L. OLSEN
Chief of Civil Litigation

ROBERT A. BERRY, ISB #7442
MEGAN A. LARRONDO, ISB #10597
Deputy Attorneys General
P. O. Box 83720
Boise, ID 83720
*Attorneys for Appellants Bradley Little and Lawerence Denney*

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 1

## INTRODUCTION

This Court should stay, pending disposition on appeal, the preliminary injunction order that has left a federal district court running Idaho's initiative process and outsourcing parts of that process to private companies. The Supreme Court has, as recently as last week, held that orders that threaten the integrity of and undermine voter confidence in an election must be stayed.

Without a stay, the state and public interest will be irreparably injured. The only evidence on the record is that the injunction will be "near impossible" disruptive to the ability of Idaho's election officials to prepare and conduct fair, free, and safe elections in August and November. (Dkt. 2-6, ¶ 18.) There can be no question that the threat of fraud will persevere in an electronic-signature system implemented on nine-days' notice without any testing or vetting by the State—all of which threatens the public interest in maintaining the integrity and voter confidence in the election.

In arguing their exemption from Idaho's initiative law is a one-off, (Dkt. 7, at 1), Appellees ask this Court to allow irreparable harm to the State's election and initiative systems on the strength of their ability to foresee the course of a global pandemic and the actions of other initiative campaigns. Already, Appellees' abilities as fortune tellers have proved problematic. At least one other Idaho initiative campaign has indicated that it will "'likely ask for a similar extension of time and permission to collect signatures electronically.'" (See Ex. G attached herewith.)

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 2

A stay pending appeal is properly granted and necessary here.

## ARGUMENT

**A.  The U.S. Supreme Court has indicated the requested stay should be granted**.

The Supreme Court clearly signaled last week that the requested stay should be granted when it stayed a preliminary injunction "pending disposition of an appeal in the Court of Appeals for the Eleventh Circuit and disposition of the petition for writ of certiorari" if sought. *Merrill v. People 1st of Ala.*, __S.Ct.__, 2020 WL 3604049, at *1 (Mem.) (U.S. July 2, 2020) (No. 19A1063).

The district court decision is uncannily similar to the decision here. In *People 1st of Ala. v. Merrill*, No. 2:20-CV-00619-AKK, 2020 WL 3207824, (N.D. Ala. June 15, 2020), the district court granted a preliminary injunction enjoining enforcement of Alabama laws that required a notary or witnesses and photo identification for absentee voting and imposed a de facto ban on curbside voting. *Id.* at *2. Certain registered voters at higher risk from COVID-19 argued such measures violated their rights under the First and Fourteenth Amendment by dissuading them from voting due to their fears of contracting COVID-19. *Id.* at *1, *3-5.

The district court concluded that the possibility that those laws could dissuade some voters from voting was not justified by Alabama's argument that the

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 3

challenged laws were important "to preserve the legitimacy of upcoming elections by preventing voter fraud and safeguarding voter confidence." *Id.* at *2, 17-19.

Alabama sought an emergency stay from the Eleventh Circuit, which was denied. *People 1st of Ala. v. Sec'y of State for Ala.*, No. 20-12184, 2020 WL 3478093, at *1 (11th Cir. June 25, 2020). The United States Supreme Court promptly granted the stay. *Merrill v. People First of Alabama*, No. 19A1063, 2020 WL 3604049, at *1 (U.S. July 2, 2020). The arguments Alabama made to the U.S. Supreme Court are fundamentally the same as those here: (1) the federal court rewrote State election law in the middle of an election, (2) federal courts may not change the rules of an ongoing or rapidly approaching election, and (3) the district court's order, which enjoined enforcement of the State's anti-fraud provisions, threatened the integrity of the election and undermined voter confidence in the election. Emergency Appl. For Stay, *Merrill v. People 1st of Ala.*, No. 19A1063, at 2-3 (U.S. Jun. 29, 2020). There can be little doubt that the U.S. Supreme Court will reach the same conclusion if this Court denies the requested stay.

Notably, in its Application for Stay, Alabama informed the Court of the need to "provide clear guidance to the States and courts" because States across the country were "facing claims that their generally applicable election laws must be shelved during the current pandemic." *Id.* at 3. And the U.S. Supreme Court took that action.

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 4

This Court should follow the U.S. Supreme Court's instruction to hear and grant the requested stay.

**B.     The *Nken* standard applies here, Appellee's diversions notwithstanding.**

Appellees rely on an incorrect, deferential standard for review of a motion to stay pending appeal. (Dkt. 7-1 at 10.) The formulation Appellees posit applies to stays pending removal in immigration proceedings. *See Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) ("we hereby . . . issue this opinion to clarify our standard for stays of removal . . . ."). Subsequent to the *Levia-Perez* decision, this Court has repeatedly applied the standard expressed in *Nken v. Holder*, 556 U.S. 418 (2009), to requests for stay of a preliminary injunction pending appeal. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019); *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012).

**C.     Appellants are likely to succeed on the merits.**

Appellees also apply the incorrect standard to the success on the merits factor. In order to show the necessary substantial likelihood of success on the merits, "'at a minimum,' a petitioner must show that there is a 'substantial case for relief on the merits'" but not that "'it is more likely than not that they will win on the merits.'" *Lair*, 697 F.3d at 1204 (quoting *Leiva-Perez*, 640 F.3d at 968 and 966).

Appellees argue that the standard of review applied to the merits of the appeal influences the analysis of Appellants' likelihood of success on the merits here. This

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 5

is error. Appellees' approach results in "a pre-adjudication adjudication" that "defeat[s] the purpose of a stay" by conflating the two standards. *Leiva-Perez*, 640 F.3d at 967. In fact, contrary to Appellees' diversions, the heightened standard for mandatory injunctions applies and is fatal here. Appellants raised this standard below and Appellees' conceded it applies. *See* Dkts. 7-8 and 7-1 at 19.

Appellants have shown the requisite likelihood of success on the merits to justify a stay. First, Appellees do not have standing because they have not shown State action caused their alleged injury. Appellees mischaracterize facts to argue that there was some sort of "refusal" by the State to take action. *See* D. Ct. Dkt. 14 at 13. In fairness, Appellees had a one-day email exchange with a staffer seeking a meeting with the Governor in order to propose an idea that was contrary to statute during an exceptionally busy time *when no state law prevented signature gathering*. When they did not get a meeting, they abandoned all efforts. Eighty-two days later, they filed a lawsuit. Appellees did not make any request in a form to which the Appellants could reasonably have been expected to respond, even despite the State's demonstrated willingness to work to protect First Amendment rights. *See* Dkts. 2-4 and 2-5. If this degree of contact equates to state action, all public officials are at the mercy of a simple emailed request for a meeting. In fact, counsel for Appellees admitted at oral argument that there was no state action involved in Appellees' decision to stop collecting signatures. *See* Ex. H, Hearing Tr., at 12:1-8; *see also*

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 6

District Court Dkt. 14 at 6-7. On the standing issue alone, Appellants have demonstrated the requisite likelihood of success on the merits.[1]

Second, the district court's analysis read the requirement that Appellees prove reasonable diligence out of the law by concluding "Reclaim Idaho's constitutional rights in the petition process are not forfeitable based on a timeline." D. Ct. Dkt. 14 at 15. The district court concluded it was irrelevant how long Reclaim Idaho waited to start its petition drive. This "build your own burden" model does not account for the generous 18 months provided by the State to circulate initiative petitions, and is not consistent with this Court's legal standard established in *Angle*. The First Amendment does not protect against the consequences of procrastination. Appellees' lack of reasonable diligence is further evidenced by the token contacts Appellees made to State officials prior to shutting down their campaign, discussed above. Further, Appellees sat on their rights until June 8th after suspending their campaign on March 18th. Whether characterized as laches or a failure of reasonable diligence, this delay is fatal to Appellees' suit.

---

[1] Appellees have apparently abandoned their argument that the Governor's stay at home order conferred standing. *See* Dkt. 7-1 at 15. Appellees conceded at hearing that even if the Governor had made "an exception for [their] First Amendment activities," it wouldn't have made a difference. Ex. H at 17:16-25. If this argument has not been abandoned, Appellees did not even inquire about whether they could collect signatures as essential personnel. *See* Dkt. 2-7. This argument is not being raised for the first time on appeal; it was also made before the District Court. *See* District Court Dkt. 16 at 5-6.

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 7

Finally, Appellees completely fail to address—and thus concede—the case law that establishes that First Amendment rights can be suspended by laws that are neutral laws of general applicability that have a clear and substantial relation to public health. The Stay at Home Order is such a law and is therefore cannot show a constitutional injury.

**D.  The district court's remedy raises substantial questions of law that justify a stay.**

A stay is appropriate where "the case raises substantial difficult or novel legal issues meriting a stay." Mary K. Kane, 11 Fed. Prac. & Proc. Civ. § 2904 Injunction Pending Appeal (3d ed.) This case raises substantial and difficult issues regarding when a federal district court can take control of and significantly alter a state's election and initiative processes. Dkt. 2-1 at 14.

Appellees would have this Court believe that the district court's order has virtually no effect on the State's election law. The district court disagrees. At oral argument, the district court stated, "I find [ordering an extension and electronic signatures] more problematic [than certifying the initiative petition for the ballot] because **I think it does force the court to run the elections, run the initiative process for the state** . . ." Ex. H, at 48:2-10 (emphasis added). This statement, in addition to the upheaval to the State detailed in Appellants' Emergency Motion (*see*

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 8

Dkt. 2-1, Ex. E, and attached Ex. I and J), is proof of just how problematic the preliminary injunction is.

Not only did the district court rewrite state election law, it ordered the State to outsource one of its principal roles—verification of petition signatures—to a private company identified and paid for by the Appellees, and that has not been vetted by the State. Appellees argue that DocuSign is "merely a technology;" in 2020, 'mere technologies' can have huge impacts and great potential for internet-based election-fraud. This is particularly true when the State is compelled to create and implement a new system out of whole cloth in just nine days.

### E. The factors of irreparable injury, balance of harm, and public interest all favor a stay.

It is disappointing that Appellees would have this Court believe that the effect of the district court's injunction is mere administrative inconvenience. *See* Dkt. 7-1 at 11 and 20.

Yet, the **only** evidence in the record is that the injunction the district court ordered will have extremely disruptive effects (*see* Ex. 2-1, Ex. E, and attached Ex. I), and that is without the **nine-day** time frame to create and implement a totally new electronic signature collection system with the very real potential for such a hastily created system to fail or be abused. *See* Dkt. 2-6. This will wreak severe disruption on (non-party) county clerks to verify the signatures that Appellees collected prior

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 9

to March 18th and then instructed the county clerks not to verify. Ex. I. The *Purcell* principle applies here because of the potential for voter confusion and to undermine the integrity of and voter confidence in the election.

While Appellees can pursue their initiative next year, Appellants' concerns with voter confusion and confidence support a finding of irreparable harm. In particular, it boggles the mind that Appellees suggest there can be no harm in launching a hastily created, contrary to statute, and fraud-inviting electronic signature gathering system statewide on July 9th. The irreparable harm to the State has already begun, but it will be made manifest on July 9th. This harm is magnitudes greater than the "speculation" in *Al Otro Lado v. Wolf,* where there was concern plaintiffs would cause delays in the processing of asylum applications by "requesting to reschedule their [credible fear] interviews" or consulting with an attorney. *Al Otro Lado*, 952 F.3d at 1010.

## CONCLUSION

The Court should stay the preliminary injunction pending appeal.

Respectfully submitted,

    */s/ Robert A. Berry*
ROBERT A. BERRY, ISB #7442
Deputy Attorney General
P. O. Box 83720
Boise, ID 83720
*Attorneys for Appellants*

REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR STAY PENDING APPEAL - 10

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 7, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

                                                */s/ Robert A. Berry*
                                                 ROBERT A. BERRY