**Case No. 20-35584**

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

RECLAIM IDAHO, et al.,
Plaintiffs-Appellees,

vs.

BRADLEY LITTLE, et al.,
Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Idaho
D.C. No. 1:20-cv-00268-BLW
(Winmill, B.L., Presiding)

---

## EXCERPTS OF RECORD, VOLUME 1 OF 2

---

LAWRENCE G. WASDEN
ATTORNEY GENERAL

BRIAN KANE
Assistant Chief Deputy

STEVEN L. OLSEN
Chief of Civil Litigation Division

ROBERT A. BERRY, ISB NO. 7442
MEGAN A. LARRONDO, ISB NO. 10597
Deputy Attorneys General
Statehouse, Room 210, Boise, ID 83720
Telephone: (208) 334-2400
Fax: (208) 854-8073
Counsel for Appellants Bradley Little and Lawerence Denney

July 17, 2020

**INDEX**

| Volume 1 Documents | Date | District Court Docket No. | Excerpt Pages |
|---|---|---|---|
| Order Granting in Part and Denying in Part Plaintiffs' Motion to Enforce the Court's Order | June 30, 2020 | 19 | ER-001 – ER-004 |
| Order Denying Motion to Stay | June 29, 2020 | 17 | ER-005 – ER-008 |
| Memorandum Decision and Order | June 26, 2020 | 14 | ER-009 – ER-035 |

| Volume 2 Documents | Date | District Court Docket No. | Excerpt Pages |
|---|---|---|---|
| Notice of Appeal | June 30, 2020 | 20 | ER-036 – ER-037 |
| Exhibit A to Status Report on Compliance with Court's June 30th Order | July 10, 2020 | 25-1 | ER-038 – ER-042 |
| Notice re: Dkt. 19 | July 9, 2020 | 23 | ER-043 – ER-047 |
| Expedited Motion to Enforce Court's Order | June 29, 2020 | 18 | ER-048 – ER-050 |
| Notice and Motion to Stay Pursuant to F.R.C.P. 62(d) and F.R.A.P. 8 | June 26, 2020 | 16 | ER-051 – ER-064 |
| Exhibit A to: Notice and Motion to Stay Pursuant to F.R.C.P. 62(d) and F.R.A.P. 8 (Order to Self-Isolate (as amended April 15, 2020); Order to Self-Isolate (March 25, 2020)) | June 26, 2020 | 16-1 | ER-065 – ER-082 |

| | | | |
|---|---|---|---|
| Exhibit B to: Notice and Motion to Stay Pursuant to F.R.C.P. 62(d) and F.R.A.P. 8 (CISA guidance) | June 26, 2020 | 16-2 | ER-083 – ER-106 |
| Transcript, June 23, 2020 Hearing Pages: 1, 12, 17, 48 | June 23, 2020 | 15 | ER-107 – ER-111 |
| Corrected Supplemental Declaration of Phil McGrane in Support of Defendants | June 23, 2020 | 12-1 | ER-112 – ER-118 |
| Supplemental Declaration of Jason Hancock in Support of Defendants | June 23, 2020 | 11-2 | ER-119 – ER-122 |
| Governor Little and Idaho Secretary of State's Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. 2) | June 18, 2020 | 8 | ER-123 – ER-141 |
| Declaration of Phil McGrane in Support of Defendants | June 18, 2020 | 8-1 | ER-142 – ER-147 |
| Declaration of Jason Hancock in Support of Defendants | June 18, 2020 | 8-2 | ER-148 – ER-153 |
| Exhibit A to Declaration of Jason Hancock in Support of Defendants (Secretary of State Dir. 2015-1) | June 18, 2020 | 8-3 | ER-154 |
| Declaration of Sheryl Millard in Support of Defendants | June 18, 2020 | 8-4 | ER-155 – ER-157 |
| Exhibit A to Declaration of Sheryl Millard in Support of Defendants | June 18, 2020 | 8-5 | ER-158 – ER-159 |
| Declaration of Andrew Mitzel in Support of Defendants | June 18, 2020 | 8-6 | ER-160 – ER-162 |
| Exhibit A to Declaration of Andrew Mitzel in Support of Defendants | June 18, 2020 | 8-7 | ER-163 – ER-166 |
| Declaration of Counsel in Support of Defendants | June 18, 2020 | 8-8 | ER-164 – ER-169 |

| Exhibit A to Declaration of Counsel in Support of Defendants | June 18, 2020 | 8-9 | ER-170 – ER-176 |
|---|---|---|---|
| Expedited Motion for Preliminary Injunction | June 6, 2020 | 2 | ER-177 – ER-179 |
| Declaration of Luke Mayville in Support of Expedited Motion for Preliminary Injunction | June 6, 2020 | 2-2 | ER-180 – ER-196 |
| Declaration of Linda Larson in Support of Expedited Motion for Preliminary Injunction | June 6, 2020 | 2-6 | ER-197 – ER-201 |
| Complaint | June 6, 2020 | 1 | ER-202 – ER-213 |
| District Court Docket Entries / Record of Actions | (as of July 17, 2020) | N/A | ER-214 – ER-218 |

DATED:  July 17, 2020.

Respectfully submitted,

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By: _/s/ Robert A. Berry_
ROBERT A BERRY
Deputy Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 17, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Robert A. Berry*

ROBERT A BERRY
Deputy Attorney General

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RECLAIM IDAHO, a political action committee, and LUKE MAYVILLE,<br><br>    Plaintiffs,<br><br>      v.<br><br>BRADLEY LITTLE, in his official capacity as the Governor of Idaho, and LAWERENCE DENNEY, in his official capacity as Idaho's Secretary of State,<br><br>    Defendants. | Case No. 1:20-cv-00268-BLW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDER** |

## INTRODUCTION

Pending before the Court is Reclaim Idaho's Expedited Motion to Enforce the Court's Order. Dkt. 18. For the reasons that follow, the Court will grant in part and deny in part Plaintiffs' motion.

## BACKGROUND

On June 23, 2020, the Court heard oral argument on Plaintiffs' Expedited Motion for Preliminary Injunction. Dkt. 2. At the close of arguments, the Court orally granted the motion. A written order was subsequently filed to set forth the facts, circumstances, and legal framework the Court considered in conducting its

**ORDER DENYING MOTION TO ENFORCE THE COURT'S ORDER – 1**

analysis of the motion and in fashioning relief. Dkt. 14. Thereafter, Defendants filed a motion seeking a stay of the Court's order pending their appeal to the Court of Appeals for the Ninth Circuit. Dkt. 16. The Court denied the motion for a stay— and its order granting Plaintiff's motion for injunction stands. Dkt. 17.

The Court's decision allowed the State to choose between two options available to secure Reclaim Idaho's constitutional rights in the initiative process. The State could choose between (1) certifying the signatures already gathered are sufficient to have the initiative placed on the 2020 ballot; or (2) allowing Reclaim Idaho an additional 48-days to gather signatures through online solicitation and submission. The State has indicated it will file an appeal, and declined to choose either option. *See* Dkt. 16. Citing the State's refusal, Reclaim Idaho now asks the Court to order Defendants to certify the initiative for the November ballot. Dkt. 18 at 2.

## DISCUSSION

Reclaim Idaho argues the option to gather signatures through an online process would require the State to engage in developing a "process and protocol" with Reclaim Idaho. *Id.* Reclaim Idaho argues that, "Defendants' clear response shows that they have no intention of cooperating with Reclaim Idaho" and thus the only relief available is an order that Defendants certify the initiative for the November 2020 ballot. *Id.* However, it is not clear that the State is unwilling to

work with Reclaim Idaho in fashioning an online solicitation process if ordered to do so by the Court. And, ordering an online solicitation pays greater respect to the State's right to limit the initiative process in ways which do not violate the Plaintiffs' First Amendment rights. Finally, online solicitation is the specific remedy originally sought by the Plaintiffs. For these reasons, the Court will grant the Plaintiffs' motion in directing the State to comply with the Court's order, but will not require immediate certification of the Plaintiffs initiative for the 2020 ballot.

At this point, no appeal has been filed by the State, and it necessarily follows that no stay has been granted by the Ninth Circuit Court of Appeals. Unless such a stay is granted, the State must fully comply with the Court's orders. Having declined to choose between certifying the initiative for the 2020 ballot and accepting online solicitation of signatures, the Court will direct the State to immediately begin implementation of the remedy originally requested by the Plaintiffs – online solicitation and acceptance of signature.

According to Reclaim Idaho's motion for injunction, "it has developed a plan to contract with DocuSign, a company trusted by financial institutions with an impeccable tradition for reliability in gathering electronic signatures." Dkt. 2-1 at 2. Reclaim Idaho stated that DocuSign, "stands ready to provide its service immediately." *Id.* at 10. Counsel will be ordered to meet and confer by Thursday,

**ORDER DENYING MOTION TO ENFORCE THE COURT'S ORDER – 3**

July 2, to implement the process and protocol for accepting signatures gathered through the DocuSign technology.  Absent an agreement of counsel to the contrary, that process and protocol shall be completed by Thursday, July 9, and Plaintiffs may thereafter resume the solicitation of signatures for a period of 48 days. Should counsel be unable to reach an agreement as to the process and protocol, Reclaim Idaho may implement an industry standard process and protocol. Such process and protocol must ensure the highest available standards are used to verify a signer's identity, legislative district, and the authenticity of the signature.

## ORDER

**IT IS ORDERED that:**

1.    Plaintiff's Expedited Motion to Enforce the Court's Order (Dkt. 18) is **GRANTED IN PART** and **DENIED IN PART** as explained in this decision.

2.    The 48-day period provided for Reclaim Idaho to resume its petition gathering activities begins July 9, 2020.

DATED: June 30, 2020

B. Lynn Winmill
U.S. District Court Judge

**ORDER DENYING MOTION TO ENFORCE THE COURT'S ORDER – 4**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RECLAIM IDAHO, a political action committee, and LUKE MAYVILLE,<br><br>        Plaintiffs,<br><br>        v.<br><br>BRADLEY LITTLE, in his official capacity as the Governor of Idaho, and LAWERENCE DENNEY, in his official capacity as Idaho's Secretary of State,<br><br>        Defendants. | Case No. 1:20-cv-00268-BLW<br><br>**ORDER DENYING MOTION TO STAY** |

On June 23, 2020, the Court heard oral argument on Plaintiffs' Expedited Motion for Preliminary Injunction. Dkt. 2. At the close of arguments, the Court orally granted the motion. A written order was subsequently filed to set forth the facts, circumstances, and legal framework the Court considered in conducting its analysis of the motion and in fashioning relief.  Dkt. 14.

In its oral pronouncement and written order, the Court applied the test set out by the Ninth Circuit in *Angle v. Miller,* to conclude that the State's refusal, in the face of a global pandemic, to extend the statutory deadline and permit online

ER - 005

solicitation and gathering of signatures to have a citizen's initiative placed on the 2020 ballot amounts to an unconstitutional burden on the Plaintiffs' First Amendment rights. *See* 673 F.3d 1122, 1132 (9th Cir. 2012). Based on that determination, the Court concluded that Plaintiff had established it is likely to succeed on the merits, it will suffer irreparable harm in the absence of preliminary relief, the balance of the equities tips in its favor, and an injunction is in the interests of the public.

The Court acknowledged in its decision that the issue of an appropriate remedy was challenging. Ultimately, however, the Court concluded that the State could either certify the signatures already gathered are sufficient to have the initiative placed on the 2020 ballot, or could allow Reclaim Idaho an additional 48-days to gather signatures through online solicitation and submission. The Court's order gave the State until Friday, June 26, 2020 to choose between the two alternative remedies.

The State declined the Court's invitation and, instead, filed a Notice and Motion to Stay Pursuant to F.R.C.P. 62(d) and F.R.A.P. 8. Dkt. 16. The State's motion challenges the Court's decision, and requests that the Court stay the effect of its decision pending an appeal.

Unless the Court orders otherwise, "an interlocutory or final judgment in an action for an injunction" is not stayed after being entered, even if an appeal is

**ORDER DENYING MOTION TO STAY – 2**

taken. Fed. R. Civ. P. 62(c)(1). Federal Rule of Civil Procedure 62(d) governs injunctions pending an appeal. The rule provides that, "[w]hile an appeal is pending from an interlocutory order or final judgment that grants or refuses to modify an injunction" the Court may "suspend, modify, restore, or grant an injunction" on "terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). Thus, Rule 62(d) affords the Court discretion when a party requests a stay of an injunction pending appeal.

A stay pending appeal overlaps with the function of a preliminary injunction—each prevents "some action before the legality of that action has been conclusively determined." *Nken v. Holder*, 556 U.S. 418, 428-29 (2009). "A stay is an 'intrusion into the ordinary processes of administration and judicial review.'" *Id.* at 427 (citing *Virginia Petroleum Jobbers Assn. v. FPC*, 259 F.2d 921, 925 (C.A.D.C.1958) (per curium). Accordingly, a stay pending resolution on appeal "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Virginian R. Co. v. United States*, 272 U.S. 658 (1926).

Here, the Court will exercise its discretion to deny the State's motion. Simply put, staying the effect of the Court's decision will deny the Plaintiffs an effective remedy. There is a narrow window of opportunity to provide Reclaim Idaho and the State the time necessary to establish the process and protocol for gathering signatures on-line and then provide Recall Idaho with the requested 48-

**ORDER DENYING MOTION TO STAY – 3**

days to complete the on-line solicitation and gathering of signatures.  Granting a stay of the Court's decision would effectively prevent Reclaim Idaho from having its initiative placed on the 2020 general ballot, and thereby deny it the remedy required by the First Amendment.

## ORDER

**IT IS ORDERED that:**

1.     Defendants' Notice And Motion To Stay Pursuant To F.R.C.P. 62(D) and F.R.A.P. 8 (Dkt. 16) is **DENIED**.

DATED: June 29, 2020

B. Lynn Winmill
U.S. District Court Judge

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RECLAIM IDAHO, a political action committee, and LUKE MAYVILLE,<br><br>    Plaintiffs,<br><br>    v.<br><br>BRADLEY LITTLE, in his official capacity as the Governor of Idaho, and LAWERENCE DENNEY, in his official capacity as Idaho's Secretary of State,<br><br>    Defendants. | Case No. 1:20-cv-00268-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

On June 23, 2020 the Court heard oral argument on Plaintiffs' Expedited Motion for Preliminary Injunction. Dkt. 2. At the close of arguments, the Court orally granted the motion. As stated during the hearing, oral decision was warranted given the expedited nature of the situation and the rights at issue. This written order further details the facts, circumstances, and legal framework the Court considered in conducting its analysis of the motion and in fashioning relief.

**MEMORANDUM DECISION AND ORDER – 1**

# BACKGROUND

Reclaim Idaho is a volunteer-run political action committee that is seeking to place a citizen initiative on the November 2020 general election ballot. Dkt. 2-1 at 1. Luke Mayville is the committee's co-founder. *Id.* The Court will refer to the Plaintiffs collectively as "Reclaim Idaho." Reclaim Idaho filed suit against the Governor of Idaho, Bradley Little, and Idaho's Secretary of State, Lawrence Denny. The Court will refer to the Defendants collectively as "the State." Reclaim Idaho sued the State for alleged violations of federal constitutional rights within Idaho's citizen initiative process. *See Compl.*, Dkt. 1. The complaint was accompanied by Reclaim Idaho's expedited motion for preliminary injunction seeking redress for the alleged constitutional violations.

Reclaim asks the Court to: (1) declare the State's application of I.C. § 34-1802 in the unprecedented COVID-19 pandemic scenario violates the U.S. Constitution by unfairly burdening the initiative process; (2) declare that the State's application of I.C. § 34-1807 on the facts and circumstances violates the U.S. Constitution by unduly the burdening signature gathering efforts in support of the Invest in Idaho initiative; (3) issue a preliminary injunction enjoining the State's enforcement of I.C. § 34-1802 and I.C. § 34-1807 for as long as necessary to remove the undue burden; (4) issue a preliminary injunction extending the deadline to submit petition signatures to county clerks for verification; (5) issue a

**MEMORANDUM DECISION AND ORDER – 2**

preliminary injunction extending the deadline to submit petition signatures to the

Secretary of State; (6) issue a preliminary injunction to permit the electronic

circulation of the initiative and to the State to accept electronic signatures. Dkt. 1 at

11.

The State filed a response in opposition, asserting Reclaim Idaho lacks

standing to bring this matter due to its own dilatory conduct and, relatedly, is

barred by the doctrine of laches due to its delay in bringing the suit and motion

more than a month after the applicable deadline. Dkt. 8 at 1-2. In addition, the

State argues Reclaim Idaho asks the "Court to aggressively invade the Idaho

Legislature's constitutionally-created authority and create a signature-gathering

alternative that is nowhere contemplated by the Idaho Constitution or Code." *Id.* at

2. The State argues also that, the Court should decline the request for preliminary

relief because Reclaim Idaho will not be successful on the merits of its claim and

the burdens the relief would impose on the State are substantial. *Id.* at 3.

The following facts and circumstances form the backdrop of this dispute.

## A.    Idaho's Ballot Initiative Process

Idaho citizens may enjoy the right reserved by Idaho's Constitution to

propose and enact laws independent of any act of the state legislature. *See* Idaho

Const. Art. III, sec. 1. Since the 1890 approval of Idaho's Constitution, the state

legislature has enacted a statutory scheme to define the citizen initiative process.

**MEMORANDUM DECISION AND ORDER – 3**

*See* Idaho Code §§ 35-1801 *et. seq*. The laws set forth conditions that a petitioner must meet before an initiative will be placed on a general election ballot by the Secretary of State. *Id.*

A petitioner begins the process by filing a proposed ballot initiative with the Secretary of State's office. Idaho Code § 34-1801(a). After review and approval of the initiative's form, the Secretary of State provides the petitioner with a ballot title. *Id.* at § 34-1809(2)(b). With the ballot title and approval in hand, the petitioner may begin to collect signatures in support of the initiative. The statue allows petitioners up to 18 months to collect signatures—with a final submission deadline of April 30 in the election year the initiative will be held. Idaho Code § 34-1802.

Idaho law requires petitioners to gather the signatures of legal voters equal to 6 percent of the qualified electors from the last election in 18 of Idaho's legislative districts. Idaho Code § 34-1805. In this case, the last election was the November 2018 general election. Considering the number of qualified electors from 2018, a petitioner seeking to place an initiative on the November 2020 ballot must have collected 55,057 or more valid signatures. Dkt. 1 at 4. The law requires also that, any person working to gather signatures be a citizen of Idaho. Idaho Code § 34-1807. The signature gatherer must verify that they personally witnessed

each person sign the petition—in other words, Idaho has an in-person signature requirement. *Id.*

All signatures must be submitted to the appropriate county clerk for verification no later than the close of business on May 1 in the year of the election, (or 18 months from the date the petitioner receives the official ballot title from the SOS, whichever is earlier). Idaho Code § 34-1802(2). County clerks must verify the signatures by June 30 of the election year. *Id.* at § 34-1802(3). The verified signatures are submitted to the Secretary of State's office, which makes the final count to determine if enough signatures have been collected to meet the statutory requirement. *Id.* If so, the initiative is included on the general election ballot for citizen consideration and vote.

### B. Reclaim Idaho's Initiative Actions

In 2019, Reclaim Idaho started "Invest in Idaho," an initiative drive aimed at getting an initiative on the 2020 general election ballot which would allow voters to approve an increase in funding for kindergarten through 12th grade education in Idaho. Dkt. 2-1 at 2. Reclaim Idaho was formed in 2017 and successfully petitioned to place an initiative to expand Medicaid on the November 2018 ballot. *Id.* at 4. Idaho citizen voters passed the initiative into law. *Id.*

Reclaim Idaho used the successful model it developed for the Medicaid petition to organize its Invest in Idaho initiative drive. *Id.* The model included

"early stage" volunteer recruitment events, where the group worked to build teams in Idaho's legislative districts. *Id.* at 4–5. The model also included a plan to gradually scale up signature collection efforts in the final months before the May 1, 2020 submission deadline. *Id.* at 5. According to declarations submitted in support of the motion, the gradual scaling of Reclaim Idaho's efforts reached "critical mass" in early March 2020—the surge in volunteers and favorable springtime weather and daylight hours was anticipated to boost its organizing efforts in the final stages of its drive. *Silver Decl.*, Dkt. 2-4 at 4.

According to its model, Reclaim Idaho began its initiative drive in September 2019. *Schroeder Decl.*, Dkt. 2-3 at 3. Reclaim Idaho held twenty-five volunteer organizing meetings and signature gathering events between September 14, 2019 and December 15, 2019. *Id.* at 2–3. Reclaim Idaho held five more events between the first of the year and January 3, 2020. *Id.* at 4. Thereafter, Reclaim Idaho's organizing leaders held signature gathering events in their own districts throughout the month of February and into early March. *Id.* In some districts, such as District 4, Reclaim Idaho held a signature gathering event each week. *Id.*; *see also Prince Decl.*, Dkt. 2-5 at 2.

These efforts slowed with the news of the COVID-19 pandemic. Dkt. 2-3 at 4–5. During the week of March 8, 2020, Reclaim Idaho's leadership began to communicate with its local volunteer leaders regarding a set of guidelines it

**MEMORANDUM DECISION AND ORDER – 6**

developed for safer signature collection. *Id.* Around that time, the Centers for

Disease Control (CDC) issued guidance to curb the spread of the novel

coronavirus. *Id.* at 5. Maintaining a distance between oneself and others of at least

six feet was – and still is – one of the CDC's main recommendations to prevent the

spread of the virus. *See id.* Provided this guidance and rising health concerns

voiced by its volunteers, Reclaim Idaho cancelled all door-to-door canvassing

events and signature gathering efforts at larger public events on or around March

18, 2020. *Id.* at 8.

### C. Executive COVID-19 Response

Meanwhile the State of Idaho was also responding to the threat of the virus.

As news of Idaho's first confirmed case broke, Idaho Governor Bradley Little

quickly took executive action to curb the spread of COVID-19 in the state. *See*

Dkt. 8 at 5–6. On March 13, 2020, he declared a state of emergency by

proclamation due to "the occurrence and imminent threat to public health and

safety arising from the effects of the 2019 novel coronavirus (COVID-19)." Dkt. 2-

1 at 7. On March 25, 2020, the Governor issued an extreme emergency

proclamation which contained a broad stay-at-home order for most Idahoans. *Id.* at

9. The stay-at-home order was in effect until April 15, 2020. The order required

"all individuals anywhere in the State of Idaho to self-isolate – that is, stay at home

– except for certain essential activities and work to provide essential business and

government services or perform essential public infrastructure construction, including housing." The order stated that failure to comply with its provisions could constitute a misdemeanor. It included exceptions for certain people or activities, but did not include an exception for First Amendment activities.[1] The stay at home order was amended on April 15, 2020 and extended to April 30, 2020. The amended order also did not include an exception for First Amendment activities. When the amended order expired, it was replaced with Idaho's first "Stay Healthy Order," which was part of the State's staged reopening plan set forth in the broader "Idaho Rebounds" action. Idaho began to reopen according to the staged plan on May 1, 2020.

### D.    State Response to Reclaim Idaho's Inquiries

On March 16, 2020, Reclaim Idaho contacted the offices of the Governor and Secretary of State. Dkt. 2-1 at 12; Dkt. 8 at 5. Because the parties dispute the express intent of the communications, the Court will briefly detail their content.

According to the record before the Court, the public relations director for Reclaim Idaho, Rebecca Schroeder, emailed Andrew Mitzel, Senior Advisor to Governor Little, the morning of March 16, 2020. Dkt. 2-3 at 5. Ms. Schroeder's

---

[1] The Court takes judicial notice pursuant to the authority granted in Federal Rule of Evidence 201(b) and (c)(1) of the full text of the Governor's emergency proclamations and stay-at-home orders to the extent they have not been fully referenced and included in the briefing on this matter.

**MEMORANDUM DECISION AND ORDER – 8**

email voiced Reclaim Idaho's concerns about the potential negative health effects involved in in-person signature collection efforts. She indicated that continuing to gather petitions face-to-face would put volunteers and the general public at risk and was contrary to the guidelines from public health officials. *Id.* at 6. Ms. Schroeder noted that, as a result of health risk posed by in-person signature gathering, "Idahoans are no longer able to exercise their constitutional right to bring forward a ballot initiative." *Id.* She asked for the opportunity for Reclaim Idaho to meet with the Governor to discuss the safest way to move forward and stated the "extraordinary situation requires action by the Governor to ensure the public safety is maintained" while Reclaim Idaho exercised its Constitutional rights. *Id.*

Mr. Mitzel's response to the email was as follows: "Thanks for reaching out. I would encourage you to reach out to the Secretary of State's office with your concerns regarding ballot initiatives as they oversee the process." *Id.* Ms. Schroeder sent a reply that she had simultaneously reached out to the Secretary of State's office, and had been advised that it would take Legislative or Executive action to extend the signature deadline. *Id.* The email exchange included a final response from Mr. Mitzel where he indicated "the Governor's Office has no intention of taking executive action on this matter." *Id.* at 7.

**MEMORANDUM DECISION AND ORDER – 9**

Ms. Schroeder also contacted the Secretary of State's office on March 16,

2020. Her email to Secretary Denny included in part:

> Dear Mr. Denney:
>
> We are faced with a global pandemic. Idahoans are responding by cancelling public events and dramatically reducing face-to-face interactions. This reality creates extraordinary obstacles for Idaho's ballot initiative process and the constitutional right of every Idahoan to participate in that process. Idaho's initiative qualification laws, which are among the strictest in the country, require tens of thousands of face-to-face interactions. In the interest of safeguarding the health of the public and protecting the constitutional rights of Idahoans, we are asking to authorize temporary online petitioning for Idaho ballot initiatives. The state of Idaho conducts much of our public business online, from voter registration to campaign finance documentation to the registration of new corporations. It is well within our capacity as a state to process petition signatures online. During these extraordinary times, online petitioning is the most effective way to protect public safety while maintaining the constitutional right of Idahoans to participate in the ballot initiative process.
>
> Please advise if this is within the realm of the SOS, or whether it would require Legislative or Executive action.

Dkt. 2-3 at 7-8.

In response to the inquiry, a member of the Secretary of State's staff replied as

follows:

> Thank you and your fellow supporters for sharing your concern with us via email. While we understand the current situation we are in is unprecedented and can appreciate how the further efforts in attaining the remaining signatures for your petition will be complicated logistically, we are sorry to say that there is no statute allowing electronic signatures for petitions in Idaho Statutes 34 Chapter 18.

Dkt. 2-3 at 8.

**MEMORANDUM DECISION AND ORDER – 10**

According to the record before the Court, the exchanges detailed above represent the entirety of communications between the parties regarding the issue of signature collection during the pandemic.

The Court considered Reclaim Idaho's motion for temporary restraining order with these facts and circumstances in mind. Next, the Court will set forth the standard of law and applicable legal framework for its analysis of the motion and the State's opposition.

## STANDARD OF LAW

Motions for preliminary injunctions are governed by Federal Rule of Civil Procedure 65. A plaintiff seeking a preliminary injunction must establish that: 1) it is likely to succeed on the merits; 2) it is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in its favor; and 4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008). A preliminary injunction is "an extraordinary remedy never awarded as of right." *Id.* at 24. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' *Id.* (citation omitted).

## ANALYSIS

In addition to arguing Reclaim Idaho is unlikely to succeed on the basis of its First Amendment-based claim, the State argues Reclaim Idaho lacks Article III

**MEMORANDUM DECISION AND ORDER – 11**

standing. Prior to addressing the *Winter* factors, the Court will provide greater detail regarding its finding that Reclaim Idaho has standing to bring this action and seek a preliminary injunction.

### A.    Standing

To establish standing under Article III, Reclaim Idaho had the burden of establishing three elements: (1) it has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action"; and (3) "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and footnote omitted).

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred […] to establish standing depends considerably upon whether the plaintiff is […] an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

*Id.* at 561–62.

As I noted during the motion hearing, the first and third elements of the standing inquiry are easily recognized and established under these facts and circumstances. Indeed, the State focused its standing argument on the second element, arguing the alleged First Amendment violation was not fairly traceable to the actions or inaction of the State. *See* Dkt. 8 at 7.

**MEMORANDUM DECISION AND ORDER – 12**

Reclaim Idaho is challenging the legality of the State's refusal to make reasonable accommodations for the continuation of its signature gathering and petition circulation activities during the pandemic, which resulted in the stay-at-home order discussed above. *See* Dkt. 1 at 11. As primary support for the contention that the State's refusal to act resulted in injury to its First Amendment rights, Reclaim Idaho cites the declaration of Ms. Schroeder. Dkt. 2-3. In the declaration, Ms. Schroeder details her communications with the offices of Governor Little and Secretary Denny. *Id.* In her communication with the Governor's office, Ms. Schroeder was clear that the impact of health concerns and the guidance of public health officials made it impossible for Idahoans to continue to exercise their constitutional rights to bring forth a ballot initiative. *Id.* at 6. She noted also that, the "extraordinary situation requires action by the Governor to ensure the public safety is maintained" while also preserving the constitutional rights within the initiative process. *Id.*

In response, the State argues that because the Governor is not involved in the oversight, management, or legislation of the initiative process, his inaction does not give Reclaim Idaho standing to sue. Dkt. 8 at 5. The Court finds the State's argument unpersuasive in light of the extraordinary situation imposed on all parties

MEMORANDUM DECISION AND ORDER – 13

by the COVID-19 pandemic and the Governor's authority to issue executive orders in times of declared emergency.[2]

Using similar reasoning, the State argues that the Secretary of State did not act and could not act to provide a remedy. The email correspondence between Ms. Schroeder and a staff member of the Secretary's offices shows the Secretary's only response to Reclaim Idaho's inquiry was to refer back to the limitations of the statue—in other words, to interpret the statutory conditions narrowly, even in the face of the pandemic. *See* Dkt. 8 at 7. This was the Secretary's response and a choice that arguably impacted the ability of Reclaim Idaho to continue to exercise its constitutional rights within the petition process. Provided the foregoing, the Court finds that the inaction of the State resulted in the alleged injury to Reclaim Idaho.

The Court must also address the State's arguments that it was Reclaim Idaho's own decisions that resulted in its failure to collect the requisite number of signatures. Dkt. 8 at 7. The State argues that by deciding to begin its signature collection campaign in September 2019, Reclaim Idaho failed to take advantage of the entire 18-month signature collection window permitted within the statute. *Id.*

---

[2] As an example of such authority, during the hearing on the motion, the undersigned noted actions taken by the Governor and the State to extend the deadline for submission of absentee ballots, revise primary election deadlines, and to all but eliminate in-person primary voting due to the pandemic and stay-at-home order.

**MEMORANDUM DECISION AND ORDER – 14**

However, reason dictates that there is no way Reclaim Idaho could have predicted the global COVID-19 pandemic when it began to plan its initiative drive—planning which necessarily must have occurred in advance of August 2019 when its petition was first submitted to the Secretary of State's office. *See* Dkt. 8 at 7.

Further, Reclaim Idaho's constitutional rights in the petition process are not forfeitable based on a timeline. The rights exist throughout the duration of the petition circulation process, whether on the first day or in the last months. The Court properly addresses these concerns by determining the severity of the burden within the context of the level of scrutiny that should be applied to evaluate the effect of the State's actions. *See infra* at pp. 17–22.

In sum, the Court finds the evidence shows Reclaim Idaho was reasonably diligent in collecting signatures until the news of COVID-19 in Idaho and the subsequent stay-at-home order made it impossible to do so. The Court finds the evidence shows also, absent a preliminary injunction, Reclaim Idaho will be unable to get the initiative on the ballot in November 2020. If the State had been willing to extend the submission deadline or accept electronic signatures as urged by Reclaim Idaho, the State could have redressed the alleged injury. As such, the Court finds Reclaim Idaho has standing to proceed in this matter.

**B.    Likelihood of Success on the Merits**

Reclaim Idaho asserts an as-applied challenge to Idaho's initiative process laws. As detailed above, Reclaim Idaho argues the decisions by the Governor and Secretary of State to strictly enforce the conditions of Idaho's ballot initiative laws without reasonable accommodation has violated their First and Fourteenth Amendment rights by making it impossible for the initiative to appear on the November 2020 ballot. *See* Dkt. 1; Dkt. 2-1.

In response, the State argues Reclaim Idaho did not act with diligence in collecting signatures before the 2020 general election given the 18-month timeframe allowed by statute, and that Reclaim Idaho suspended its own campaign in advance of the issuance of Idaho's stay-at-home order. *See* Dkt. 8. To the merits of the motion for preliminary injunction, the State argues Reclaim Idaho cannot show the burden to their First Amendment rights was severe, due to the alleged delay and action cited immediately above, and that the State's regulatory interest outweighs any harm to Reclaim Idaho—especially because they can begin the initiative process anew for the 2022 election—and will have the entire 18-month period to do so. Dkt. 8 at 2.

**1.  Constitutional Framework**

Courts generally apply the framework established in *Anderson v. Celebrezze*, as later refined in *Burdick v. Takushi* (the *Anderson-Burdick* framework) when

considering the constitutionality of ballot access restrictions. 460 U.S. 780 (1983); 504 U.S. 428 (1992). However, because Reclaim Idaho is not challenging the base constitutionality of Idaho's ballot access conditions, but rather their application, this Court finds, as did the U.S. District Court for the District of Nevada in *Fair Maps Nevada*, that the test set out by the Ninth Circuit in *Angle v. Miller* is the framework the Court should apply to determine whether the State's inaction amounts to an unconstitutional burden in this case. *See* 673 F.3d 1122, 1132 (9th Cir. 2012). Notably, neither party contests the law on this issue.

In *Angle*, the Ninth Circuit explained the Supreme Court of the United States has found there are two ways in which restrictions on the initiative process can burden core political speech. 673 F.3d 1122, 1132 (9th Cir. 2012). First, when regulations that restrict one-on-one communication between petition circulators and voters. *Id.* Second, when regulations make it less likely proponents will be able to get enough signatures to place an initiative on the ballot. *Id.*

The first type of restriction is largely not at issue in this case. The management of the spread of COVID-19 has foreclosed in-person one-on-one communication between Reclaim Idaho's petition circulator volunteers and voters. However, the second type of restriction is at issue because the question before the Court is whether the State's strict application of the statutory initiative conditions

make or made it less likely for Reclaim Idaho to get enough signatures to place the Invest in Idaho initiative on the ballot.

Reclaim Idaho has shown that the State refused to take executive action to ensure Reclaim Idaho could continue to safely gather signatures from March 16, 2020, when the request was made to both the Governor and the Secretary of State, through the end of the amended stay-at-home order, or April 30, 2020. Coincidently, April 30th was also the last day permitted by statute to gather signatures. Therefore, the Court finds the State's refusal to make reasonable accommodations during this time period made it less likely for Reclaim Idaho to get enough signatures to place the Invest in Idaho initiative on the November 2020 ballot. In reality, the State's refusal to act made it impossible for Reclaim Idaho to get the initiative on the ballot absent an order of relief from this Court.

Having found a burden on Reclaim Idaho's core political speech, the Court must determine whether strict scrutiny or some lesser form of review applies to the State's conduct. *See Arizonans for Fair Elections v. Hobbs*, 2020 WL 1905747, at *8 (D. Ariz. Apr. 17, 2020); *see also Ariz. Green Party v. Reagan*, 838 F.3d 983, 985 (9th Cir. 2016). Courts apply strict scrutiny when: (1) the proponents of the initiative have been "reasonably diligent" as compared to other initiative proponents; and (2) when the restrictions significantly inhibit the proponents'

ability to place an initiative on the ballot. *Fair Maps Nevada v. Cegavske*, 2020 WL 2798018, at *11 (D. Nev. May 29, 2020).

### a. Reasonable Diligence

As detailed above, by the start of 2020, Reclaim Idaho had held 25 volunteer organizing and signature gathering events since receiving their ballot title a few months prior. By the middle of February 2020, Reclaim Idaho had collected approximately 15,000 signatures. By mid-March, they had collected approximately 30,000 signatures. At that time, they had qualified in 5 out of Idaho's 18 legislative districts. Dkt. 2-1 at 6. "[S]even additional districts [were] within a few hundred signatures of qualification." *Id.*

According to the committee's records, their signature collection numbers for the Invest in Idaho drive exceeded those for their successful Medicaid initiative drive in the last general election cycle. In other words, by mid-March they were on track, according to their data, to collect the necessary number of signatures, in all legislative districts, by the May 1, 2020 submission deadline.

In presenting their argument to the Court, Reclaim Idaho stressed that, in volunteer-led signature gathering campaigns, the momentum of the final months prior to submission results in a significant increase in the number of signatures gathered per week or even per day. Thus, the time Reclaim Idaho lost due to the

**MEMORANDUM DECISION AND ORDER – 19**

pandemic and the subsequent stay-at-home order, was key to reaching their goal and was anticipated in their organizing plan.

The State argues, however, that Reclaim Idaho's decision to voluntarily suspend its own signature collection efforts on or around March 16, 2020 and prior to the March 25, 2020 state-at-home order, forecloses their ability to bring this claim. The State's logic being that it was Reclaim Idaho's act, not any act of the State, that suspended their signature collection efforts. This argument ignores the elephant in the room, which is COVID-19. In reality, it was the impact of the virus that resulted in the suspension of Reclaim Idaho's in-person signature collection activities. As the record shows, Reclaim Idaho immediately sought to work with the State's officials to come up with a State-sanctioned solution so its volunteer members could continue the petition drive. Reclaim Idaho sought that relief on March 16, 2020.

The State argues also that Reclaim Idaho simply should have begun its petition drive sooner—as it had an entire 18 months to conduct the drive under law. However, under the reasonable diligence standard applicable here, the Court finds the argument unpersuasive. Reclaim Idaho began collecting signatures as soon as their data from a previous successful campaign suggested they do so. Once the group started its drive, there is no real argument to diligence in effort.

**MEMORANDUM DECISION AND ORDER – 20**

Considering the foregoing, the Court finds that Reclaim Idaho was reasonably diligent in collecting signatures.

        *b.*   Ability to Place Initiative on the Ballot

This case is about Reclaim Idaho's First Amendment rights pertaining to the 2020 election cycle. The State argues Reclaim Idaho's ability to place the initiative on the ballot is not inhibited because they may simply try again in 2022. This argument is connected to the State's laches argument—where the State argues Reclaim Idaho lost its opportunity for relief by failing to file this lawsuit before May 1, 2020, the signature submission deadline. The State's argument asks the Court to set aside the right Reclaim Idaho had to carry its initiative process through its final stages during this election cycle.

As the Supreme Court has recognized, "when an initiative fails to qualify for the ballot, it does not become 'the focus of statewide discussion.'" *Angle v. Miller*, 673 F.3d 1122, 1133 (9th Cir. 2012) (citing *Meyer*, 486 U.S. at 423). In this case, the State's action to strictly enforce Idaho's ballot access conditions, i.e. to refuse to make reasonable accommodation, during the unprecedented time of the pandemic, reduced "the total quantum of speech" on the public issue of education funding. *See id.* The State's purported remedy belies the reason Reclaim Idaho staged its initiative campaign during this cycle—which was to give Idaho voters a chance, on the November 2020 ballot, to make a change to tax law to provide

**MEMORANDUM DECISION AND ORDER – 21**

additional funding to public school students in the coming years. Delay in the process until 2022 could result in impact to tens of thousands of public students over that time—which strikes to the heart of Reclaim Idaho's First Amendment activity.

In its inquiry, the Court recognizes that the State has a significant regulatory interest in its own processes—including mandating adherence to the ballot access conditions set in statute. *See Angle*, 673 F.3d at 1135. However, that interest must be weighed against the effects of strict enforcement when an extraordinary situation arises that prevents its citizens from exercising a constitutional right. *See Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 191–92 (1999) (states have "considerable leeway" in regulating the electoral process, provided their choices do not produce "undue hindrances to political conversations and the exchange of ideas.").

As acknowledged by the State during oral argument on the motion, the State recently recognized the limits to its regulatory authority when it came to the need to provide electronic avenues for online voter registration and absentee ballot requests. *See also* Dkt. 9 at 7. The Governor provided for all-absentee voting in the 2020 primary elections due to COVID-19. *Id.* To do so, the Governor worked with the Secretary of State to suspend certain statutory requirements. *Id.* Notably, Idaho's online voter-registration processes requires the individual to attest to their

identity by way of a digital signature—which, presumably, state election officials must verify.

Ultimately, even if the State decides to include the Invest in Idaho initiative on the ballot by deeming the signatures gathered thus far sufficient, the State retains the ultimate opportunity to verify each and every vote cast for or against the initiative through the ballot review process.

For these reasons, the Court finds the State's refusal to make reasonable accommodations inhibited Reclaim Idaho's ability to place the Invest in Idaho initiative on the November 2020 general election ballot. As such, the Court finds Reclaim Idaho is likely to succeed on the merits of its claims.

### C.    Irreparable Harm

Absent a preliminary injunction, there is no chance their Invest in Idaho initiative will appear on the Idaho ballot. Indeed, the deadline for signature submission has expired.  As such, without Court order, the initiative will not appear on the 2020 general election ballot. Therefore, the Court finds Reclaim Idaho is likely to suffer irreparable harm in the absence of preliminary relief.

### D.    Balance of Equities

The Court must also balance the relative hardships on the parties should it provide preliminary relief or decline the request. *Winter v. Natural Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20 (2008); *University of Hawaii Prof. Asm. v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999).

The State cites the significant burden that will be placed on its employees and offices due to the delay in signature gathering and submission as it will take considerable resources to verify the additional signatures that will be submitted. The Court is sympathetic to the plight of the State and its officers and employees. During the course of the pandemic, the courts have likewise experienced the strain placed on employees and departments due to the need to manage new situations and scenarios. However, this Court in particular is aware of the great resource provided by technology to solve problems. The use of new technologically based processes has allowed the Court to hold hearings without exposing litgants, attorneys, or the public to the risk of COVID-19 all the while, preserving constitutional rights and liberties.

Considering the foregoing, when balancing the harm of a severe burden on core political speech and the not insignificant burden reasonable accommodation may place on the State, the Court must find in favor of preserving constitutional rights. This finding acknowledges the faith the Court has in the State's abilities to devise reasonable accommodations to preserve the rights at issue—as it has successfully done in other contexts during this trying time.

**MEMORANDUM DECISION AND ORDER – 24**

### E. Public Interest

Finally, the Court must consider whether issuing preliminary relief is in the public interest. As the Court's discussion of the other *Winter* factors makes clear, it is in the public's interest to issue relief that would provide a remedy to preserve Reclaim Idaho's right to have the ability to place the Invest in Idaho initiative on the November 2020 ballot. Because the public itself would be the final arbiter of whether the initiative is passed into law, the Court finds issuing a preliminary injunction requiring the State to make reasonable accommodation to protect Reclaim Idaho's core political speech rights in the initiative process is in the public's interest.

In sum, the Court finds Reclaim Idaho has established it is likely to succeed on the merits, it will suffer irreparable harm in the absence of preliminary relief, the balance of the equities tips in its favor, and an injunction is in the interests of the public. Having so found, the Court will now discuss the issue of a remedy.

### F. Remedy

The Court struggled in determining what would be an appropriate remedy. The Court is disinclined to tell the State how to run the initiative process. However, as the analysis herein explains, the First and Fourteenth Amendments do place some restrictions on the State's authority through the preservation of constitutional rights. *See supra* at pp. 20–22.

**MEMORANDUM DECISION AND ORDER – 25**

The Court considered the following facts when fashioning its remedy and order of accommodations. First, Reclaim Idaho and its volunteers were well on their way in obtaining the signatures necessary for inclusion of the initiative on the November 2020 ballot. Due to Reclaim Idaho's projected chance of success in obtaining the necessary signatures absent the extraordinary event of the COVID-19 pandemic, the first remedy the State can choose to provide is to certify the signatures that have been collected and place the initiative on the November 2020 ballot for voter consideration. In fashioning this remedy, the Court also considered, as argued by Reclaim Idaho during the hearing, that Idaho's ballot conditions are more stringent than those found in other states. As such, the State providing some leeway in its requirements in this extraordinary moment is a viable option.

However, recognizing the State's interest in upholding its conditions, specifically the numerical and geographical requirements, the Court provided that the State may instead choose to allow Reclaim Idaho an additional 48-days to gather signatures through online solicitation and submission. The Court declined to issue relief simply allowing the additional time for in-person signature collection. There is ongoing uncertainty surrounding the current and future spread of COVID-19. Close personal encounters still pose an ongoing and substantial risks to health of Idaho's citizens and Reclaim Idaho's volunteers who would be contacting and communicating with them. Finally, the State has demonstrated it is comfortable

relying on digital signature collection in both the voter registration and online ballot collection processes. Neither of these processes is different from the initiative process in that all require the verification and certification of the digital signature. The Court's order permits the State until 5:00 p.m. M.S.T. on June 26, 2020 to choose between the two alternative remedies.

## ORDER

**IT IS ORDERED that:**

1.      Plaintiffs' Expedited Motion for Preliminary Injunction (Dkt. 2) is **GRANTED**.

2.      On or before June 26, 2020 at 5:00 p.m. M.S.T., Defendants must file with the Court a notice detailing the reasonable accommodation they have chosen to make to preserve Plaintiffs' core political speech rights as detailed in this Memorandum Decision and Order.

DATED: June 26, 2020

B. Lynn Winmill
U.S. District Court Judge