**Case No. 20-35584**

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

RECLAIM IDAHO, et al.,
Plaintiffs-Appellees,

vs.

BRADLEY LITTLE, et al.,
Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Idaho
D.C. No. 1:20-cv-00268-BLW
(Winmill, B.L., Presiding)

---

## REPLY BRIEF OF APPELLANTS LITTLE AND DENNEY

---

LAWRENCE G. WASDEN
ATTORNEY GENERAL

BRIAN KANE
Assistant Chief Deputy

STEVEN L. OLSEN
Chief of Civil Litigation Division

ROBERT A. BERRY, ISB NO. 7442
MEGAN A. LARRONDO, ISB NO. 10597
Deputy Attorneys General
Statehouse, Room 210, Boise, ID 83720
Telephone: (208) 334-2400
Fax: (208) 854-8073
Counsel for Appellants Bradley Little and Lawerence Denney

August 3, 2020

# TABLE OF CONTENTS

INTRODUCTION ............................................................................ 1

    A.    The Supreme Court has rendered this case moot. .......................... 2

    B.    Supreme Court precedent commands reversal. ............................. 2

    C.    The First Amendment does not protect Reclaim Idaho
        from the consequences of its actions. ............................................. 9

        1.    The reasonable diligence inquiry is stringent. ....................... 9

        2.    There was no state action that imposed a burden on
               Reclaim Idaho ....................................................................... 12

        3.    The district court erred as a matter of law in the
               scrutiny that it applied. ......................................................... 14

    D.    The district court erred by failing to follow this Court's
        precedent for issuing mandatory injunctive relief. ...................... 17

    E.    Because Reclaim Idaho sought to remedy past alleged
        violations of its rights, the State's sovereign immunity
        bars the district court's orders .................................................... 20

    F.    The District Court failed to account for the irreparable harm
        its orders caused the State. ......................................................... 21

    G.    The district court erred in concluding that Reclaim Idaho
        would suffer irreparable injury and in concluding that the
        equities favored Reclaim Idaho. ................................................. 28

CONCLUSION ............................................................................. 29

CERTIFICATE OF COMPLIANCE................................................. 30

# TABLE OF AUTHORITIES

## CASES

*Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012) ......................................... *passim*

*Bryan v. Fawkes*, 61 V.I. 416 (V.I. 2014) ........................................... 5

*Buckley v. American Constitutional Law Foundation, Inc.*,
   525 U.S. 182 (1999) .................................................................. 3, 4

*Burdick v. Takushi*, 504 U.S. 428 (1992) ......................................... 25

*Chamness v. Bowen* 722 F.3d 1110 (9th Cir. 2013) ......................................... 16

*Davis v. Federal Election Commission*, 554 U.S. 724, 735 (2008) ................... 2

*Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 (11th Cir. 2019) ....... 26

*Dudum v. Arntz*, 640 F.3d 1098 (9th Cir. 2011) ............................................. 16

*Edelman v. Jordan*, 415 U.S. 651 (1974) ......................................... 21

*Esshaki v. Whitmer*, No. 20-1336, 2020 WL 2185553
   (6th Cir. May 5, 2020) ......................................................... 13, 19

*Fair Maps Nev. v. Cegavske*, No. 3:20-cv-00271-MMD-WGC,
   2020 WL 2798018 ................................................................... 5, 8

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ..................................... 18

*Green v. Mansour*, 474 U.S. 64 (1985) .................................................... 20, 21

*Han v. DOJ*, 45 F.3d 333 (9th Cir. 1995) ......................................... 21

*Hart v. Massanari*, 266 F.3d 1155 (2001) ...................................... 18

*In re Grimmett*, No. BR 16-01094-JDP, 2017 WL 2437231
   (Bankr. D. Idaho June 5, 2017) ................................................. 26

*In Re Mayfield*, No. 16-22134-D-7, 2016 WL 3958982
    (Bankr. E.D. Cal. Jul. 15, 2016) ................................................................... 25

*Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298 (2012) ........... 2

*Little v. Reclaim Idaho*, 591 U.S. \_\_\_\_, slip op. at 1 (July 30, 2020) ........ *passim*

*Meyer v. Grant*, 486 U.S. 414 (1988) ............................................................. 3, 4

*Miller v. Thurston*, 2020 WL 428245 (8th Cir. July 23, 2020) ........................ 15

*Morgan v. White*, , No. 20 C 2189, 2020 WL 2526484
    (N. Dist. Ill. May 18, 2020) ................................................................... 11, 12

*Papasan v. Allain,* 478 U.S. 265 (1986) ......................................................... 21

*Prete v. Bradbury*, 438. F.3d. 949 (9th Cir. 2006) ..................................... 15, 16

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ................................................... *passim*

*Sinner v. Jaeger*, No. 3:20-cv-00076, 2020 WL 3244143
    (D.N.D. 2020) ............................................................................................ 11

*Sugarman v. Dougall*, 413 U.S. 634 (1973) ................................................... 25

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986) ............... 25

*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020) ............................. 9, 12, 13

## CONSTITUTIONAL PROVISIONS

Idaho Const. art. III, § 1 .......................................................................................24

Arizona Const., art. IV, part 1, § 1 .................................................................. 25

Arkansas Const., art. 5, § 1 .............................................................................. 25

California Const., art. II, § 8(b) ........................................................................ 25

Colorado Const., art. V, § 1 ............................................................................. 25

Florida Const., art. XI, § 3 .................................................................. 25

Illinois Const., art. XIV, § 3 .............................................................. 25

Maine Const., art. IV, part 3, § 18 ..................................................... 25

Maryland Const., art. XVI ................................................................. 25

Mass. Const., art. XLVIII & art. LXXXI, § 2 ................................... 25

Michigan Const., art. II, § 9 and art. XII, § 2 ................................... 25

Mississippi Const., art. XV, § 273 .................................................... 25

Missouri Const., art. III, §§ 50-53 ..................................................... 25

Montana Const., art. III, § 4 & 7, art. XIV, § 9 ............................... 25

Nebraska Const., art. III, §§ 2-3 ........................................................ 25

Nevada Const., art. 19, § 2-3 ............................................................. 25

New Mexico Const., art. IV, § 1 ........................................................ 25

North Dakota Const., art. III, §§ 4, 9- & 10 ..................................... 25

Ohio Const., art. 2, §§ 1-1c .............................................................. 25

Oklahoma Const., art. V, § 2 and 6 ................................................... 25

Oregon Const., art. IV, § 1 ................................................................ 25

South Dakota Const., art. III, § 1 ...................................................... 25

Washington Cons., art. II, § 1 ........................................................... 25

Wyoming Const., art. 3, § 52(c) ........................................................ 25

**STATUTES**

Idaho Code § 28-50-108(b)(2) ............................................................ 26

Idaho Code § 28-50-118 .................................................................... 26

Idaho Code § 34-603 ......................................................................... 2

Idaho Code § 34-1802(1) .................................................................. 6

Idaho Code § 34-1802(2) .................................................................. 6

Idaho Code § 34-1802(3) .................................................................. 6

Idaho Code § 34-1802(4) .................................................................. 7

Idaho Code § 34-1805 ....................................................................... 25

Idaho Code § 34-1807 ................................................................ *passim*

Idaho Code § 34-1812A .................................................................... 7

Idaho Code § 34-1812B .................................................................... 7

Idaho Code § 34-437A ...................................................................... 24

Idaho Code § 74-106(4)(g) ............................................................... 24

Idaho Code § 74-106 (4)(h)(iv) ........................................................ 24

Alaska Stat. § 15.45 .......................................................................... *

Utah Code §§ 201, 208, 301 ............................................................ *

1933 Idaho Sess. Laws 435 .............................................................. 5

**RULES**

Supreme Court Rule 13 ...................................................................... 1

— v —

# INTRODUCTION

On July 30, 2020, the U.S. Supreme Court stayed the district court's preliminary injunction orders that are under appeal here. *Little v. Reclaim Idaho*, 591 U.S. ___, slip op. at 1 (Jul. 30, 2020) (per curiam). The Justices sent a clear signal that they will likely grant certiorari and reverse the district court's orders if this Court does not. Concurring in the stay order, Chief Justice Roberts, joined by Justices Alito, Gorsuch, and Kavanaugh, accurately described the district court's orders as a "transformative and intrusive" intervention that "recast the initiative process" and resulted in a preliminary injunction so "extraordinary" as to fall outside the bounds of permissible discretion. *Little*, slip op. at 4-5 (Roberts, C.J., with Alito, Gorsuch, and Kavanaugh, JJ., concurring). The concurring opinion also emphasized that the district court's orders impose immediate and ongoing irreparable harm on the State that outweighs any injury to Reclaim Idaho, particularly in light of the fact Reclaim Idaho contributed to any harm to itself because it "'delayed unnecessarily' its pursuit of relief until more than a month after the deadline for submitting signatures." *Id.* at 4 (citations omitted).

This Court should follow the Supreme Court's direction and reverse the district court's decisions.

**A.    The Supreme Court has rendered this case moot.**

The Supreme Court's stay of the district court's orders pending disposition of a petition for certiorari has rendered Reclaim Idaho's case moot and non-justiciable: "it is impossible for a court to grant any effectual relief whatever" to Reclaim Idaho.  *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (internal quotation omitted) (citation omitted).  In addition to staying the orders that allowed Reclaim Idaho to collect additional signatures, the Supreme Court stayed the orders that would have allowed immediate certification of the ballot measure.  *Little*, slip op. at 1 (per curiam); [ER 34-35].  This case has been mooted by the stay, the fact that a petition for certiorari need not be filed until 90 days after this Court issues its order (Supreme Court Rule 13), and the September 7 deadline to finalize the ballots, Idaho Code § 34-603. Further, no exception applies because there is no reasonable expectation that a pandemic will occur again.  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735 (2008).

**B.    Supreme Court precedent commands reversal.**

Reclaim Idaho misconstrues Supreme Court precedent in arguing that the Court has already blessed the district court's interpretation of the First Amendment. As the Court quite clearly spelled out just days ago in granting the State's application to stay the district court's orders, the Court has never held that content-neutral, non-discriminatory laws that govern the process by which initiatives are put on the ballot implicate the First Amendment's protections or that, if the First Amendment is

implicated, the State's important regulatory interests are insufficient to justify those laws. *See Little*, slip op. at 2-3 (concurrence).

Chief Justice Roberts provided clear guidance in his concurrence, stating that "the Court is reasonably likely to grant certiorari to resolve the [circuit] split presented by this case" on the question of whether "the First Amendment requires scrutiny of the interests of the State whenever a neutral, procedural regulation inhibits a person's ability to place an initiative on the ballot"—the very question that Reclaim Idaho incorrectly contends is settled law under existing Supreme Court precedent. [Compare *id*. at 2 with Dkt. 30 at 24-26.]

The Chief Justice also wrote "there is a fair prospect that the Court will set aside the District Court order." *Id.* at 3 (citation omitted). This is a case about "how items are placed on the ballot in the first place" and "[n]othing in the Constitution requires Idaho . . . to provide for ballot initiatives." *Id.* (citing *Meyer v. Grant*, 486 U.S. 414, 424 (1988)). And "the claims at issue here challenge the application of only the most typical sort of neutral regulations on ballot access." *Id.* "Even assuming that the state laws at issue implicate the First Amendment, such reasonable, nondiscretionary restrictions are almost certainly justified by the important regulatory interests in combating fraud and ensuring that ballots are not cluttered with initiatives that have not demonstrated sufficient grassroots support." *Id.* (citing *Buckley v. Am. Const. Law Found., Inc*., 525 U.S. 182, 204-05 (1999)).

Given that in "Idaho's largest county, clerks reject about 30 to 40 percent of signatures," "[t]he State's established verification procedure is no empty formality."[1] *Id.*

In short, the Supreme Court's precedents, including its decisions in *Meyer*, and *Buckley*, have not approved the application of First Amendment scrutiny to content neutral, non-discriminatory laws that govern initiative procedures. And four Justices have clearly stated that, even if the First Amendment is implicated, the district court erred by ostensibly applying strict scrutiny and holding that the State's anti-fraud measures do not survive strict scrutiny.

That said, the State recognizes that *Angle v. Miller*, 673 F.3d 1122, 1132 (9th Cir. 2012), governs in this Circuit. [*See* Dkt. 17-1 at 29-30.] However, it is not necessary for *Angle* to be overturned for the district court's decision to be found to be in error. Another line of Supreme Court precedent—namely, *Purcell v. Gonzalez*, 549 U.S. 1 (2006)—commands reversal of the district court's decision. The district court exceeded its authority by changing the rules of Idaho's initiative process during the election process and after the signature-gathering deadline had long passed.

---

[1] Reclaim Idaho's assertion that its own pre-screening process results in a lower percentage of rejected signatures does not negate the State's important regulatory interests. [*See* Dkt. 30 at 51 n.7.] In fact, it supports the State's position that signature review is necessary to ensure that only valid signatures on initiative petitions are counted.

Reclaim Idaho erroneously attempts to distinguish *Purcell* on the grounds that the district court's orders did not alter the rules for the November election.  [*See* Dkt. 30 at 43-46.]  But the rules for the November election include the rules governing what appears on the ballot.  Reclaim Idaho's unduly narrow interpretation, is arbitrary and does not stand up to scrutiny.  The rationale underlying *Purcell* was not concerned with what exactly was a rule that governed the conduct of the election, but with the consequences of a district court's interference in an election.  *See Purcell*, 549 U.S. at 4-5; *see also Fair Maps Nev. v. Cegavske*, No. 3:20-cv-00271-MMD-WGC, 2020 WL 2798018, at *16-17 (D. Nev. May 29, 2020) (relying in part on the *Purcell* principle to refuse to order the state to allow the collection of electronic signatures on initiative petitions).

The *Purcell* "principle is particularly pertinent where plaintiffs ask courts to 'impose large-scale changes to the election process.'"  *Fair Maps Nev.*, 2020 WL 2798018, at *16 (quoting *Bryan v. Fawkes*, 61 V.I. 416, 469 (V.I. 2014)).  That is exactly what the district court's orders did—they enjoined and changed multiple Idaho statutes governing the initiative process, fundamentally altering that process, including:

- The almost 100 year-old requirement for initiative petitions to be physically signed in the circulator's presence, *see* Idaho Code § 34-1807; *and see* 1933 Idaho Sess. Laws 435;

- The requirement that petition circulators be a resident of the State of Idaho and at least 18 years old, *see* Idaho Code § 34-1807 (given that the initiative petition existed as a webpage under the district court's orders, [ER 192], anyone who forwards the link to the webpage, shares the link on social media, or shares any electronic document containing the link must be considered a petition circulator; once the link exists on the internet, there is no way for Reclaim Idaho to control who may forward or share the link);

- The requirement that petition circulators verify by affidavit that every signature on the initiative petition was signed in the circulator's presence and the other verifications that petition circulators are required to provide regarding the signatures they collect, *see* Idaho Code § 34-1807;

- The April 30, 2020 deadline to collect signatures on Reclaim Idaho's initiative petition, *see* Idaho Code § 34-1802(1);

- The May 1, 2020 deadline for Reclaim Idaho to submit signatures on initiative petitions to the non-party county clerks for verification, *see* Idaho Code § 34-1802(2);

- The June 30, 2020 deadline for the county clerks to verify signatures, *see* Idaho Code § 34-1802(3) (this is particularly problematic because, until the orders were stayed, the county clerks still had to verify physical

signatures for Reclaim Idaho, as well as electronic signatures; the order severely shortens the verification time, and it moves the time when county clerks are verifying signatures out of a lull in election season); [*see* ER 113, 117-18];

- The ability of the non-party county clerks to verify signatures on initiative petitions, *see* Idaho Code § 34-1807 (given that Reclaim Idaho will not collect or disclose data that could allow them to authenticate signatures, [ER 39-42]);

- The July 6, 2020 deadline for initiative petitions with sufficient signatures attached to be filed with the Secretary of State, *see* Idaho Code § 34-1802(4); and

- The statutory process to allow public argument and rebuttal on the initiative petitions, which by law is required to be completed by August 1, 2020, *see* Idaho Code §§ 34-1812A, 1812B.

Contrary to Reclaim Idaho's assertions, the State has thoroughly spelled out how the district court's orders will both undermine voter confidence and cause voter confusion. [*See* Dkt. 17-1 at 22-26.] Reclaim Idaho does not contest that the district court's orders have caused confusion for Idaho's non-party election officials. And Reclaim Idaho never challenged the Idaho Legislature's determination that in-person petition circulation, circulator affidavits, and signature-matching by county clerks

are important components of fraud prevention. Reclaim Idaho's unsupported speculation that the district court's orders will not cause voter confusion because it has not heard of any voter confusion related to Idaho's May primary cannot carry any weight. [*See* Dkt. 30 at 45.]

As to the proximity to Election Day, the concern motivating the Supreme Court's decision in *Purcell* was not limited to court orders issued in immediate proximity to an election. The Court warned that all "court orders affecting elections" can negatively affect voters and elections; it is just that "that risk" only "increase[s]" "[a]s an election draws closer." *Purcell*, 549 U.S. at 5. All interested parties, voters, candidates, political parties, and election officials must be able to know and adhere to the same rules *throughout* the election process. As the district court recognized in *Fair Maps Nevada*, the *Purcell* principle is applicable even months before an election when the district court's order causes upheaval to the State's signature collection and verification process. *Fair Maps Nev.*, 2020 WL 2798018, at *17.

Further, the district court's orders immediately sowed voter confusion and distrust. It allowed Reclaim Idaho to start circulating its initiative petition electronically on July 9, 2020, almost six weeks after the statutory deadline for submitting signatures. Thus, the preliminary injunction almost immediately sowed voter confusion, confusion at the county clerk level, undermined the integrity of the election, and fundamentally altered the nature of the State's election, and did so from

July 9 until July 30, 2020, when the Supreme Court stayed the orders. The orders left the State deep in "unchartered waters" that "pose serious security concerns and other, as yet unrealized, problems." *Thompson v. Dewine*, 959 F.3d 804, 812 (6th Cir. 2020).

## C. The First Amendment does not protect Reclaim Idaho from the consequences of its actions.

### 1. The reasonable diligence inquiry is stringent.

Reclaim Idaho argues that this Court's "reasonable diligence" inquiry is limited to only a few facts cherry-picked from the record: the actions it took once it finally started its campaign and the enthusiasm of a couple of volunteers during this period. [Dkt. 30 at 31-32.] But such a limited inquiry reduces the reasonable diligence test to meaninglessness, as Reclaim Idaho demonstrates when it relies on the district court's misapprehension that any reduction of the time available to collect signatures works a First Amendment violation.[2] [*See* Dkt. 30 at 31 (citing ER 23).]

The reasonable diligence inquiry must account for the facts that Reclaim Idaho would rather this Court ignore. In *Angle*, this Court made it clear that the

---

[2] Given that Reclaim Idaho has repeatedly admitted that the pandemic, not state action, stopped its signature gathering efforts, a more accurate analogy than the one that Reclaim Idaho offers is that of a quarterback who is shockingly injured in the third quarter. The come-from-behind football team does not get a do-over because the quarterback's unexpected injury prevented it from utilizing the fourth quarter the way it had planned.

district court must carefully analyze an initiative proponent's allegations of diligence and burden. There, the initiative proponents alleged that a Nevada law that required them to gather signatures from all of Nevada's congressional districts significantly reduced the chance that the proponents would be able to gather sufficient signatures to put an initiative on the ballot because of difficulties in collecting signatures in rural areas of the state. *Angle*, 673 F.3d at 1126-27. The Court did not defer to the initiative proponents' allegations of an inability to get volunteers to travel to certain parts of Nevada, hostility to initiative petitions in rural parts of Nevada, and the fact that volunteers were afraid to gather signatures in rural counties. *Id.* at 1134. Instead, this Court asked why volunteers couldn't travel in their spare time to the rural parts of the state, what efforts had been made to recruit volunteers, why the initiative petition sponsors couldn't use paid circulators, and why signatures couldn't have been gathered from another area in a certain congressional district. *Id.* at 1134.

*Angle* requires the district court to ask the hard questions. Why couldn't Reclaim Idaho have: (1) started its initiative campaign earlier and utilized the full 18 months available by statute to gather signatures instead of six months; (2) used a signature-gathering model that spread its signature-gathering efforts out over time instead of leaving the vast majority of its signature-gathering for the final two months; (3) reached out to the Governor's office and directly asked for an executive order allowing it to collect signatures electronically instead of couching its request

as a request for a meeting with the Governor; (4) reached out to the Governor and Secretary of State more than just on March 16; (5) continued to collect signatures in-person at least before the Orders to Self-Isolate were imposed by utilizing masks or in some other socially-distanced fashion, rather than suspending its campaign on March 18;[3] (6) asked the Governor's Office whether it qualified for an exception to the Orders to Self-Isolate as election personnel; and (7) filed its lawsuit earlier, instead of waiting to file suit 36 days after the deadline to submit its signatures and 80 days after it knew of its alleged injury?[4] The district court did not ask those questions and Reclaim Idaho does not have good answers. As the Chief Justice's concurring opinion notes, Reclaim Idaho's delay was "unnecessar[y]." *Little*, 591 U.S. ___, slip op. at 4 (citation omitted). The district court erred in finding Reclaim Idaho reasonably diligent.

The decisions in *Morgan v. White*, No. 20 C 2189, 2020 WL 2526484 (N. Dist. Ill. May 18, 2020), and *Sinner v. Jaeger*, No. 3:20-cv-00076, 2020 WL 3244143, at *6 (D.N.D. 2020), support the State's position. For example, in

---

[3] While Reclaim Idaho has since attempted to reframe its actions, according to its Complaint, "Reclaim Idaho ... suspend[ed] its campaign on March 18[.]" [*Compare* ER 210 ¶ 37 *with* Dkt. 30 at 8.]

[4] Reclaim Idaho tries to escape responsibility by arguing that the pandemic caused its delay. But Reclaim Idaho could have sought legal advice by email or telephone and it had $17,000 in funds as of March 18 with which to pay an attorney. [SER 13 ¶ 20.]

*Morgan*, the plaintiff, like Reclaim Idaho, sought refuge in excuses: namely that it could not have started collecting signatures until shortly before it filed suit. 2020 WL 2526484, at *3. As should be done here, the court there rejected those excuses. *Id.* at *6.

### 2. There was no state action that imposed a burden on Reclaim Idaho.

The district court conducted its analysis under *Angle*, basing its decision on what it saw as the State's "refus[al] to take executive action to ensure Reclaim Idaho could continue to safely gather signatures…." [ER 026.] As the State explained in its Opening Brief, this was error, for the legal standard under *Angle* is whether a state's restriction *through state regulation* restricts the direct, one-on-one communication (or speech) between the voters and the petition circulators, or whether the "regulations make it less likely that proponents will be able to garner the signatures necessary to place an initiative on the ballot." [Dkt. 17-1 at 40 (citing 673 F.3d at 1132).] In short, the state action must impose the challenged burden.

Reclaim Idaho argues that the Court should consider whether the law is valid based upon the fact that the *pandemic* makes it harder for it to gather signatures. [Dkt. 30 at 33-34.] That argument is flawed; it does not focus on whether *state regulation* makes it harder to gather signatures. This is confirmed by *Thompson*, which noted that "none of Ohio's pandemic response regulations changed the status quo on the activities Plaintiffs could engage in to procure signatures for their

— 12 —

petitions." *Thompson*, 959 F.3d at 809 (as the more recent and reported decision from the 6th Circuit, *Thompson* controls over the unreported decision in *Esshaki v. Whitmer*, 2020 WL 2185553 (6th Cir. May 5, 2020)).

The fallacy of Reclaim Idaho's reasoning is shown by a hypothetical. Imagine that a significant portion of Reclaim Idaho's volunteers, approximately six weeks before the signature deadline, fell ill with food poisoning following a team luncheon and could not gather signatures for the next four weeks, preventing Reclaim Idaho from collecting signatures during that period. By Reclaim Idaho's reasoning, a court must grant it additional time to collect signatures because the food poisoning, in conjunction with the enforcement of the state's laws, violated its First Amendment rights. A court should reject this reasoning because it was not the State's restriction or regulation (or the so-called strict enforcement of those) that made it less likely for Reclaim Idaho to collect sufficient signatures.

As the hypothetical makes clear, it is the state's regulation or restriction that is tested by a court, even in an as-applied scenario, not events beyond the state's control. The district court's reliance on a failure-to-act theory was error. *Angle*, 673 F.3d at 1132.

Reclaim Idaho would make it seem as though it made very clear demands that the State was somehow obligated to act on. [Dkt. 30 at 34-35.] Though Reclaim Idaho's staff member told the Governor's staff member that some kind of action was

— 13 —

needed by the Governor "to ensure public safety," its stated goal was, "[p]lease give Reclaim Idaho co-founder Luke Mayville the opportunity meet with the Governor about the safest way to move forward with our ballot initiative." [ER 165.] Other emails referenced wanting a meeting with the Governor or a phone call. [ER 164-65.] The same staff member's email with the Secretary of State's office sought advice as to whether changing to online signature gathering "is within the realm of the [Secretary of State], or whether it would require Legislative or Executive action." [ER 158.] In short, Reclaim Idaho's communications with the State were scoping out the field. That said, even a specific request to change the rules would not have mattered because the State had no obligation to change its reasonable rules because of the pandemic.

### 3. The district court erred as a matter of law in the scrutiny that it applied.

While the district court would have erred in applying strict scrutiny, its analysis did not even apply that level of scrutiny. Instead, the district court concluded there was a First Amendment violation solely because it found a burden on Reclaim Idaho's rights. Reclaim Idaho points to a sentence where the district court wrote that the State's interests must be weighed against the impact of the State's laws on Reclaim Idaho. [Dkt. 30 at 37.] But that is not strict scrutiny. The district court did not analyze whether the State's regulations were narrowly tailored

to further a compelling governmental interest. [*See* ER 30-31.] The district court, therefore, erred as a matter of law even if strict scrutiny were appropriate (it is not).

Reclaim Idaho tries to recast the district court's orders in its futile attempt to distinguish *Miller v. Thurston*, No. 20-2095, 2020 WL 4218245 (8th Cir. Jul. 23, 2020), on the basis that there was no official stay-at-home order in Arkansas. But the district court's orders here did not solely rest on the Orders to Self-Isolate,[5] and even if they had, the Orders to Self-Isolate included an exception for election activities, which the district court failed to analyze. Reclaim Idaho's argument rests on a distinction without a difference.

Ultimately, "States may, and inevitably must, enact [and enforce] reasonable regulations of parties, elections, and ballots to reduce election—and campaign-related disorder." *Prete v. Bradbury*, 438 F.3d 949, 961 (9th Cir. 2006) (citation omitted). "*Lesser burdens* … trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Angle*, 673 F.3d at 1132 (citation omitted).

Strict scrutiny is not appropriate here. Reclaim Idaho failed to establish that Idaho's statutory provisions impose a "severe burden" on it. As such, less exacting

---

[5] The district court also faulted the State for "refus[ing] to take executive action to ensure that Reclaim Idaho could continue to safely gather signatures" between March 16, 2020 and the imposition of the stay-at-home order. [ER 26.]

— 15 —

scrutiny applies. The at-issue statutes are viewpoint-neutral and even-handed, applying to *all* initiatives regardless of their subject matter or position, which weighs against finding a severe burden. The district court simply faulted the State for not giving Reclaim Idaho an exception to the rules that govern everyone else.

This Court explained in *Chamness v. Bowen* that, because the challenged regulation was "viewpoint neutral … [it] support[ed] the conclusion that it imposes only a slight burden on speech." 722 F.3d 1110, 1118 (9th Cir. 2013) (citation omitted). Similarly, this Court has "repeatedly upheld as 'not severe' restrictions that are generally applicable, even-handed, [and] politically neutral[.]" *Dudum v. Arntz*, 640 F.3d 1098, 1106 (9th Cir. 2011) (citation omitted). Idaho's statutory provisions are just that. They apply to *all* initiatives, regardless of the subjects they address and no matter which political groups favor or oppose them, or what messages they are trying to convey. In fact, there has been no dispute that these statutes do not impose a severe burden, are constitutional because they "serve [an] important regulatory interest," and are "reasonably related" to that interest. *Prete*, 438 F.3d at 970-71.

In any case, "[a] State indisputably has a compelling interest in preserving the integrity of its election process," and that includes the initiative process (which is not required by the U.S. Constitution). *Purcell*, 549 U.S. at 4; *Little*, slip op. at 3 (concurrence). Idaho's comprehensive laws to prevent, detect, and prosecute fraud

— 16 —

are incompatible with whatever private companies may design without any oversight during a short nine day-span. For example, the use of DocuSign eliminates handwriting samples to not only compare against the voter registration file, but also to potentially identify forgeries. Similarly, the absence of an in-person circulator witnessing the electronic signature deprives the State of a witness to possible forgeries. In fact, under the DocuSign system, a person can "sign" on behalf of many others as long as they have some minimal identifying information; the State has little ability to detect it.

Further, Idaho has a significant interest in promoting dialogue by requiring proponents of initiatives to individually engage signers and, in so doing, provide opportunity for meaningful discussion. Facilitating those exchanges helps to serve the State's "undeniably … important regulatory interest 'in making sure that an initiative has sufficient grass roots support to be placed on the ballot.'" *Angle*, 673 F.3d at 1135 (citation omitted).

For these reasons, the district court erred in its scrutiny of the State's laws.

**D.    The district court erred by failing to follow this Court's precedent for issuing mandatory injunctive relief.**

The district court's preliminary injunction did not order the State to maintain the status quo. The district court's injunction did not order the State to follow its legislated election process. It did the opposite. [ER 3-4.] It ordered the State to grant Reclaim Idaho 48 more days from July 9, 2020 to be able to collect signatures

— 17 —

contrary to the State's law. [ER 4.] It further ordered the State to disregard its laws and permit Reclaim Idaho to collect electronic signatures on its own terms. [*See* ER 4, 7-8, 34-35.] As Chief Justice Roberts recognized, the district court "mandated" that the State accept "an entirely new system." *Little*, slip op. at 4 (concurrence).

The district court should have applied the mandatory injunctive relief standard in *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015), to determine whether Reclaim Idaho had shown that the law and facts clearly favor its position— a doubly demanding burden. Had the district court applied this standard, it should have concluded that Reclaim Idaho could not satisfy it. Reclaim Idaho's criticism of the mandatory injunction standard appears to be nothing more than a party complaining about a test that it cannot meet. [*See* Dkt. 30 at 22.] More importantly, though, Reclaim Idaho did not attempt to, and cannot, explain away the fact that the district court was bound to apply this Circuit's law. *See, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority, for example, has no choice but to follow it, even if convinced that such authority was wrongly decided."). As this Circuit's precedent makes clear, the difference between mandatory injunctions and prohibitory injunctions matters. Because the district court did not apply the mandatory injunction standard, it committed reversible error.

Reclaim Idaho's claim that the injunctions were "more prohibitory than mandatory" is simply wrong. [Dkt. 30 at 22.] The Court did *not* put the parties

"back in the position they were before the pandemic and its associated restrictions[.]" [*Id.*]; *see also Esshaki*, No. 20-1336, 2020 WL 2185553, at *2 (recognizing the problems with a district court implementing its own mandatory injunctive relief by extending deadlines and ordering the State to accept electronic signatures.) Any state action here in implementing the Order to Self-Isolate expired no later than May 1, 2020, prior to the lawsuit even being filed. The district court's orders forced the State to change its election laws to suit Reclaim Idaho's wants.

Though Reclaim Idaho tries to claim that the issue regarding mandatory relief is a surprise on appeal, [Dkt. 30 at 21], the record shows it is not. The State told the Court in its opposition to Reclaim Idaho's motion for a preliminary injunction that "Plaintiffs seek to change the status quote, not preserve it" and then proceeded to analyze the preliminary injunction factors. [ER 131-40.] When the district court made clear its intent to grant mandatory injunctive relief [*see* ER 35], the State filed a notice that expressly pointed out to the district court that it had not applied the correct standard, [ER 57-58.] Neither Reclaim Idaho nor the district court should have been surprised by the State's assertion of binding Ninth Circuit standards. Yet even the district court's order issued after the State brought the issue explicitly to the district court's attention did not address the issue. [ER 1-4.]

The district court erred in failing to examine whether Reclaim Idaho had met its doubly demanding burden. As Reclaim Idaho cannot show that the law and facts

clearly favored its position, especially after it delayed seeking relief, it is not entitled to the relief the district court awarded. *See Little*, slip op. at 2-4 (concurrence).

**E.** **Because Reclaim Idaho sought to remedy past alleged violations of its rights, the State's sovereign immunity bars the district court's orders.**

Reclaim Idaho's problem was not the in-person signature requirement or the deadlines. There has never been any suggestion that those requirements are constitutionally unsound. [ER 25.] Reclaim Idaho's problem was that the Coronavirus pandemic hit—which was not state action. The only state actions Reclaim Idaho pointed to and *alleged* inhibited its signature-gathering efforts were the Orders to Self-Isolate that were in effect until the Stay Healthy Order. [ER 211.] There is no dispute that, after the Stay Healthy Order was in place on May 1, there was no state action prohibiting Reclaim Idaho from collecting signatures in compliance with State law. And yet, Reclaim Idaho filed its suit more than a month after the Stay Healthy Orders took effect, seeking injunctive relief to compensate it for the alleged time lost. Such relief is retrospective.

Reclaim Idaho mischaracterizes the State's argument as a mootness argument. [Dkt. 30 at 54.] But the argument relates to the relief the district court has the authority to grant. Under the *Ex parte Young* exception to sovereign immunity, a court is permitted to grant prospective relief to remedy ongoing violations of federal rights, but relief that serves "compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour*, 474 U.S.

64, 68 (1985); *see also Edelman v. Jordan*, 415 U.S. 651, 668 (1974). "'Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred.... even though styled as something else.'" *Han v. DOJ*, 45 F.3d 333, 338 (9th Cir. 1995) (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986)).

Even Reclaim Idaho now admits that the relief the district court granted, and that it had requested, was intended to put it "in the position they were [in] before the pandemic and its associated restrictions[.]" [Dkt. 30 at 22.] Reclaim Idaho sought relief that was retrospective, seeking compensation for a past injury: "the period [of time] that Reclaim Idaho had lost" to collect signatures. [Dkt. 30 at 11.] That is not permitted under the *Ex parte Young* doctrine. *See Green*, 474 U.S. at 68-69.

## F. The District Court failed to account for the irreparable harm its order caused the State.

In granting the State's Application to Stay, the Supreme Court recognized that the district court's orders caused irreparable injury to the State. *Little*, slip op. at 1 (per curiam), 2 (concurrence). As Chief Justice Roberts wrote, "the preliminary injunction disables Idaho from vindicating its sovereign interest in the enforcement of initiative requirements that are likely consistent with the First Amendment." *Id.* at 3 (citation omitted). The burden the district court's orders impose on the State is "significant." *Id.* at 3.

— 21 —

[T]he initiative process is just one aspect of a primary and general election system facing a wide variety of challenges in the face of the pandemic. … In addition to preparing for elections with a record number of absentee ballot requests, the county clerks must now learn, under extraordinary time pressures, how to verify digital signatures through an entirely new system mandated by the District Court. The District Court did not accord sufficient weight to the State's discretionary judgments about how to prioritize limited state resources across the election system as a whole.

*Id.* at 4.

Chief Justice Roberts and Justices Alito, Gorsuch, and Kavanaugh correctly acknowledged that the district court's orders imposed a significant burden on the county clerks to (1) verify the tens of thousands of physical signatures that Reclaim Idaho collected before March 18, 2020; (2) prepare for the August and November elections (which carry their own extreme burden of uncertainty and extra work related to the pandemic); (3) address the uncertainty of how to verify Reclaim Idaho's electronic "signatures"; and (4) verify those electronic "signatures" to the best of their abilities at a time when the signature verification process has normally been completed and they are handling other election responsibilities. The only evidence is that this would be "extremely difficult to achieve."[6] [ER 114.]

---

[6] It is deeply ironic that Reclaim Idaho protests that the State does not have sufficient evidence to back up its burden arguments when Reclaim Idaho made the choice to file the lawsuit at such a late date that the district court decided the case on an expedited basis solely on the briefing.

Reclaim Idaho asks this Court to accept its own unsupported judgments about the workload of and burdens on Idaho's county clerks, but as stated by Clerk McGrane, who is in charge of elections in Idaho's largest county, "[c]onducting a fair, free, safe and accessible election is challenging anytime." [ER 113 ¶ 8.] "Doing so during the current COVID-19 pandemic, has proven, and will continue to be extremely difficult." [*Id.*] For example, Clerk McGrane had to greatly increase elections staff for the May primary election. [ER 114 ¶ 9.] Recruiting poll workers and securing polling locations has also proven to be significantly more difficult due to the pandemic. [*Id.*] Every indication is that these challenges will continue through the August and November elections. [*Id.*] Clerk McGrane anticipates that the overall workload will nearly double for each of these elections; yet, the district court imposed the significant extra workload of having to verify Reclaim Idaho's physical and electronic signatures on the county clerks in addition to this substantial and unusual burden. This Court should reject Reclaim Idaho's attempt to mischaracterize, without evidence, the extraordinary burden the district court's orders place on the non-party county clerks as a mere "need to make room and adjust" and "administrative inconvenience." [Dkt. 30 at 43.]

Further, there also can be no doubt that the district court's fundamental alteration of the State's election procedures immediately damaged the integrity of the electoral process, causing confusion and distrust. The process that Reclaim

— 23 —

Idaho imposed on the State via judicial fiat does not protect against fraud in a meaningful way. The information that Reclaim Idaho offered to provide to the county clerks for "verification" is available to anyone upon request of a state elector list.[7]  *See* Idaho Code § 34-437A.  And Reclaim Idaho's offer to provide the data that it contends authenticates signatures only if the State enters into a protective order is meaningless as the State cannot enter into a protective order against itself.[8]  [*See* Dkt. 30 at 48-49.]  In any case, Reclaim Idaho rewrites history.  It declined to provide the last four digits of social security numbers <u>in any circumstance</u> because "the clerks have never been provided this information on petitions and have no practical use for it."  [ER 41; SER 53.]

Contrary to Reclaim Idaho's contentions, the only "industry standard" in this case is the one that the district court discarded:  that the States set the process by which laws are initiated.  *See* Idaho Const. art. III, § 1; Idaho Code §§ 34-1801, *et*

---

[7] In contrast, when the State allows online voter registration, it requires the disclosure of the individual's driver's license or identification number or the last four digits of the individual's Social Security number.  [ER 120].  For absentee ballot requests, the State requires the disclosure of the individual's date of birth, driver license number, and the last four digits of their Social Security number.  (*Id.*) Further, the absentee ballot itself must be physically signed by the voter.  (*Id.*) The signature therefore is an authenticating factor regardless of how the absentee ballot was requested.

[8] There is arguably not even a need for a protective order as full social security numbers and drivers' license numbers are not subject to Idaho's public records laws. Idaho Code § 74-106(4)(g), (h)(iv).

*seq.*; *see Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (first citing *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973); and then citing *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986)). "Common sense, as well as constitutional law, compels the conclusion that <u>government</u>," not private industry, "play[s] an active role in structuring elections[.]" *Id.* (emphasis added).

In requiring original "wet" signatures on initiative petitions, Idaho's elected representatives reasonably reached the same conclusion as the court in *In Re Mayfield*: "an individual's handwritten signature is less easily forged than any form of software–generated electronic signature, and the presence of forgery is more easily detected and proven." *In re Mayfield*, No. 16-22134-D-7, 2016 WL 3958982, at *2 (Bankr. E.D. Cal. Jul. 15, 2016). This conclusion is consistent with that of all 26 states with a process for citizen initiatives and/or referendums.[9]

Thus, courts have refused to accept electronic signatures created with DocuSign as substitutes for the original "wet" signatures required by rule given "the

---

[9] *See* Alaska Stat. § 15.45; Ariz. Const. art. IV, pt. 1, § 1, ¶¶ 2-3, 7; Ark. Const. art. V, § 1; Cal. Const. art. II, § 8(b); Colo. Const. art. V, § 1, ¶ 2; Fla. Const. art. XI, § 3; Idaho Code § 34-1805; Ill. Const. art. XIV, § 3; Me. Const. art. IV, pt. 3, § 18; Md. Const. art. XVI; Mass. Const. art. XLVIII and art. LXXXI, § 2; Mich. Const. art. II, § 9 and art. XII, § 2; Miss. Const. art. XV, § 273; Mo. Const. art. III, §§ 50-53; Mont. Const. art. III, §§ 4, 7 and art. XIV, § 9; Neb. Const. art. III, §§ 2-3; Nev. Const. art. XIX, §§ 2-3; N.M. Const. art. IV, § 1; N.D. Const. art. III, §§ 4, 9, 10; Ohio Const. art. II, §§ 1-1c; Okla. Const. art. V, §§ 2, 6; Or. Const. art. IV, § 1; S.D Const. art. III, § 1; Utah Code §§ 20A-7-201, 20A-7-208, 20-A-301; Wash. Const. art. II, § 1; Wyo. Const. art. 3, § 52(c).

ease with which a DocuSign affixation can be manipulated or forged." *See id.*, 2016 WL 3958982, at *2; *In re Grimmett*, No. 16-01094-JDP, 2017 WL 2437231, at *11 (Bankr. D. Idaho Jun. 5, 2017). The case that Reclaim Idaho cites for the proposition that courts have rejected "wet" signature matching does not help its cause. In *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1320 (11th Cir. 2019), the Eleventh Circuit held that visual "wet" signature matching was problematic because it found Florida's provisions for curing ballots rejected for mismatched signatures inadequate, not for a reason that is relevant to the issues here.

The fact that there is no "industry standard" for the collection of electronic "signatures" on initiative petitions is evidenced by Reclaim Idaho's inability to identify anything more than the unsupported assertion that DocuSign has been used for petition signatures in some unknown and unspecified context in Massachusetts. [*See* Dkt. 30 at 47; SER 57.] Tellingly, the DocuSign white papers that Reclaim Idaho submitted do not identify a single initiative petition where DocuSign signatures were used. [SER 59-88.]

Finally, it is overly simplistic to assume that "wet" signatures on initiative petitions can be replaced by electronic signatures by application of the Uniform Electronic Transactions Act. First, under this Act, each governmental agency has the ability to evaluate and determine whether, to what extent, and how to accept electronic signatures. Idaho Code §§ 28-50-108(b)(2), 28-50-118. Second, in Idaho,

the requirement that "wet" signatures be collected in-person on initiative petitions is inextricably intertwined with the affidavit that petition circulators must complete when each signor signs the petition in person in front of him or her. The petition circulator avers that the circulator believes that each person stated their name, address and residence correctly, and that each signor is a qualified elector of the State of Idaho and a resident of the applicable county. *See* Idaho Code § 34-1807. That safety mechanism, which the Idaho Legislature deemed important for fraud prevention, does not exist with the method of electronic signature collection that Reclaim Idaho has imposed on the State.

Reclaim Idaho's proposed substitute of having someone who has had absolutely no contact with the electronic signor of the petition certify their belief that each signor has stated his or her name, address, and residence correctly; is a qualified elector of the State of Idaho; and a resident of a particular county—simply based on what an unknown individual or computer program types into an internet form— demonstrates that Reclaim Idaho's electronic method of signature gathering is no substitute for the method of fraud prevention chosen by Idaho's elected representatives. [*See* SER 101.]

**G.**     **The district court erred in concluding that Reclaim Idaho would suffer irreparable injury and in concluding that the equities favored Reclaim Idaho.**

In stark contrast, Reclaim Idaho will not suffer an irreparable injury as it will be able to seek to place its initiative on the ballot next year.   Reclaim Idaho has no First Amendment right to place its initiative on a ballot at any time, let alone this particular ballot.  *Little*, slip op. at 3 (concurrence) (citation omitted); *Angle*, 673 F.3d at 1133 (citation omitted).  And Reclaim Idaho's effort to have this Court consider the subject matter of its initiative in determining irreparable harm has its own First Amendment problems: Reclaim Idaho asks this Court to privilege its initiative on the basis of its subject matter.  Further, Reclaim Idaho incorrectly asks this Court to assume the initiative will pass and to impute the presumed injury to the petition signors and the assumed beneficiaries of the initiative to the initiative sponsor.

The balance of the equities favor the State.  Any injury Reclaim Idaho has suffered "is attributable at least in part to Reclaim Idaho, which 'delayed unnecessarily' its pursuit of relief."  *Little*, slip op. at 4 (concurrence) (citation omitted).  As Chief Justice Roberts wrote, "the transformative and intrusive nature of [the district court's] preliminary injunction" "recast the initiative process," resulting in a preliminary injunction so "extraordinary" as to fall outside the bounds of permissible discretion for fashioning such relief.  *Id.* at 4-5.

— 28 —

## CONCLUSION

The State respectfully requests that this Court reverse the district court's transformative preliminary injunction orders.

Respectfully submitted,

LAWRENCE G. WASDEN
Attorney General

BRIAN KANE
Assistant Chief Deputy
STEVEN L. OLSEN
Chief of Civil Litigation

_____/s/Robert A. Berry_____

ROBERT A. BERRY, ISB NO. 7442
MEGAN A. LARRONDO, ISB NO. 10597
Deputy Attorneys General
Statehouse, Room 210
Boise, ID 83720
Attorneys for Appellants

## **CERTIFICATE OF COMPLIANCE**
## **PURSUANT TO CIRCUIT RULE 32-1**

I certify that:

The brief is

 XX   Proportionately spaced, has a typeface of 14 points or more and contains 6,980  words

or is

_____  Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text

or is

_____  In conformance with the type specifications set forth at Fed. R. App. P. 32(a)(5) and does not exceed _____ pages

By: _/s/ Robert A. Berry_____
ROBERT A. BERRY, ISB NO. 7442
MEGAN A. LARRONDO, ISB NO. 10597
Deputy Attorneys General
Statehouse, Room 210
Boise, ID  83720
Attorneys for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 3, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Robert A. Berry*
ROBERT A. BERRY